## UNITED STATES v. CUDAHY PACKING CO. et al.

### (District Court, D. Connecticut. June 5, 1917.)

### Nos. 390–393.

1. FOOD ⬅20(1)—MEAT INSPECTION—INDICTMENT.

Where an indictment sufficiently set forth facts showing violations of the Meat Inspection Act, it is good against demurrers, though alleging that defendants failed to comply with a regulation of the Secretary of Agriculture determined to be unreasonable or void.

2. FOOD ⬅20(1)—MEAT INSPECTION—INDICTMENT.

An indictment charged that prior to the commission of the alleged offenses the Secretary of Agriculture had duly made and prescribed rules and regulations covering the inspection of meat and food packages to be shipped in interstate commerce in accordance with the Meat Inspection Act; that such rules were then in force, that regulation 18, § 3, par. 2, declares that, except persons having unrevoked certificates of exemption and farmers slaughtering animals on the farm, who comply with other

regulations, no person who slaughters cattle, sheep, swine, or goats in an establishment not having inspection in compliance with such regulations shall transport, offer for transportation, or permit to be transported any meat or product from such unofficial establishment in interstate or foreign commerce; that defendant did willfully and unlawfully offer to a common carrier for interstate shipment fresh meats which had not then and there been inspected and marked "Inspected and passed," within the intent of the Meat Inspection Act and in accordance with the rules and regulations of the Secretary of Agriculture; and that accused was not the holder of an unrevoked certificate of exemption and was not a farmer slaughtering cattle on the farm. Meat Inspection Act March 4, 1907, c. 2907, §§ 2, 3, 34 Stat. 1260 (Comp. St. 1916, § 8681), requires inspection of fresh meats intended for transportation or sale in interstate or foreign commerce, and declares that such as shall be found wholesome or fit for human food shall be marked "Inspected and passed," and that found otherwise shall be marked "Inspected and condemned." Other sections of the act allow the Secretary of Agriculture to prescribe regulations for inspection and for determining the sanitation of slaughterhouses; while section 18 declares that any person, firm, or corporation, who shall violate any of the provisions of the act, shall be deemed guilty of a misdemeanor. *Held* that, while the indictment emphasized the regulation of the Secretary of Agriculture, it charged a violation of the act, and hence was good against demurrer, though the regulation be invalid.

3. CONSTITUTIONAL LAW ⬦48—VALIDITY OF STATUTES.

The stated purpose of the Meat Inspection Act being to prevent the use in interstate and foreign commerce of meat and food products which are unsound, unhealthful, or otherwise unfit for human food, such act should be approved by the courts, unless in violation of unquestionable constitutional inhibition; the purpose being so beneficial.

4. CONSTITUTIONAL LAW ⬦62—FOOD ⬦1—MEAT INSPECTION—DELEGATION OF AUTHORITY—VALIDITY OF ACT.

While Congress cannot delegate its legislative powers, it can delegate authority, to proper administrative or executive officers to make administrative rules, violations of which may be punished as public offenses, where the act delegating the authority ordains that this be done; and hence the Meat Inspection Act, authorizing the Secretary of Agriculture to make rules for inspection, etc., is not invalid, on the ground that the Secretary of Agriculture was allowed to prescribe offenses—the act itself declaring that a violation of such rules should constitute an offense.

5. INDICTMENT AND INFORMATION ⬦150—DEMURRER—QUESTIONS PRESENTED.

Contention of counsel on demurrer to an indictment, unsupported by any facts in the record, need not be disposed of.

The Cudahy Packing Company and others, Sulzberger & Sons Company and others, Morris & Co. and others, and Herbert Barnes, Edward F. Mansfield, and George F. Burgess, copartners, were separately indicted for violation of the Meat Inspection Act, etc. On demurrer to the indictments. Demurrers overruled.

Thomas J. Spellacy, of Hartford, Conn., U. S. Dist. Atty., for the United States.

Samuel Campner, of New Haven, Conn., for defendants Cudahy Packing Co., Sulzberger & Sons Co., Morris & Co., and others.

Edward H. Rogers and Samuel C. Morehouse, both of New Haven, Conn., for defendants Herbert Barnes and others.

THOMAS, District Judge. The four concerns above named were separately indicted by the grand jury, and each one is charged in the

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

indictment with violations of the acts of Congress approved June 30, 1906 (34 Stat. 674–679, c. 3913), as amended on March 4, 1907 (34 Stat. 1260–1265, c. 2907), and familiarly known as the "Meat Inspection Act."

The Cudahy Packing Company is charged with 37 violations of the act, which are set forth in as many counts, and the violations are alleged to have begun on June 2, 1915, and to have continued until February 27, 1916.

Sulzberger & Sons Company is charged with 43 violations of the act, which are set forth in the same number of counts; each one setting forth a different shipment on a different day and extending from July 1, 1915, to the 21st of January, 1916.

Morris & Co. is charged with 44 violations of the act in as many different counts, covering a period of time from the 11th day of June, 1915, to the 3d day of February, 1916.

Herbert Barnes and others are charged with 59 violations of the act, beginning on the 1st day of June, 1915, and ending on the 28th day of February, 1916, as set forth in each one of the 59 counts.

The demurrers which were filed in behalf of each defendant raise the same questions of law and were argued at the same time, three of them by the same counsel; hence they will be disposed of in one memorandum, which will apply to each case with the same force and effect as though a separate memorandum was filed as to each demurrer.

In the several counts of each indictment it is set forth in substance: That before the commission of the alleged offenses the Secretary of Agriculture had duly made and prescribed certain rules and regulations covering the inspection of meat and meat food products to be shipped in interstate commerce in accordance with the act of Congress approved June 30, 1906 (34 Stat. 674 et seq.), and the amendment thereof, approved March 4, 1907 (34 Stat. 1260 et seq.). That said rules and regulations were then in full force and effect. That in paragraph 2 of section 3 of regulation 18 of said rules and regulations it is provided that:

"Except persons having unrevoked certificates of exemption and farmers slaughtering animals on the farm, who comply with the provisions of regulation 25 applicable to them, no person who slaughters cattle, sheep, swine, or goats, or processes any meat or product, in an establishment not having inspection in compliance with these regulations, shall transport or offer for transportation or cause or permit to be transported or offered for transportation any meat or product from such unofficial establishment in interstate or foreign commerce, or bring the same into an official establishment: Provided, however, that fresh meats and unmelted fresh fats which have been inspected and passed and which bear the inspection legend may be brought from any such unofficial establishment into official establishments in the same state, territory, or district when such meats or fats are found upon reinspection to be sound, healthful, wholesome, and fit for human food."

That notwithstanding these requirements, the accused, at the times stated in the various counts of the indictment, did, at the city of New Haven, willfully and unlawfully offer to a certain common carrier, then engaged in interstate commerce, certain fresh meats, "which had not then and there been inspected" and marked "Inspected and passed," within the requirements, meaning, and intent of the said act of Con-

gress and its amendment, and in accordance with the rules and regulations which the Secretary of Agriculture had prescribed in compliance with the provisions of said act, and more particularly those contained in paragraph 2, § 3, of regulation 18, for transportation to the city of New York, and did willfully cause and permit said meats and products to be thus transported and brought into an establishment owned by another person in said city of New York, although at the times stated the accused were not the holders of any unrevoked certificates of exemption, and were not farmers slaughtering cattle on the farm, but were engaged in slaughtering cattle, sheep, swine, and goats, and processing meat and meat products, in an establishment in said city of New Haven, which establishment did not have inspection in compliance with the regulations covering the inspection of meat by the United States Department of Agriculture—"against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided."

The essential parts of the Meat Inspection Act, so far as concerns the present cases are contained in the following synopsis of that law:

Sections 2 and 3 provide, in substance, that to prevent the use in interstate or foreign commerce of meats and meat food products that are unwholesome or otherwise unfit for human food, the Secretary of Agriculture shall cause a post mortem inspection to be made of all carcasses and parts thereof of cattle, sheep, swine, and goats intended to be prepared at any slaughtering, etc., establishment in any state or territory, or in the District of Columbia, for human consumption, and also intended for transportation or sale in interstate or foreign commerce, and that such as shall be found wholesome and fit for human food shall be marked "Inspected and passed," and that found otherwise shall be marked "Inspected and condemned," and then destroyed for food purposes; that after the inspectors have made a first inspection, and have marked "Inspected and passed" such meat products, carcasses, or parts thereof as are found to be wholesome and fit for human food, the inspectors may, whenever they deem it necessary, cause a re-examination of the same for the purpose of determining whether, subsequent to the first inspection, such carcasses, parts, or products had become unsound, unwholesome, or in any way unfit for human food; and that such as are then found to be unsound or otherwise unfit for human food, upon such re-examination, shall be destroyed for food purposes by that establishment where the inspection was made in the presence of an inspector, and that where such an establishment fails to destroy such unsound or otherwise unfit meat or product, the Secretary of Agriculture may remove the inspectors from that establishment; that these provisions shall also apply to carcasses, etc., brought into any slaughtering, etc., establishment, and that such examination and inspection shall be had before the said meats or products are allowed to enter any department to be treated and prepared for food purposes; and that these provisions shall likewise apply to all meat and products which, after issuing from any such establishment, shall be returned to the same or to any similar establishment maintaining federal inspection.

6. "The Secretary of Agriculture shall cause to be made, by experts in sanitation or by other competent inspectors, such inspection of all slaughtering,

* * * establishments in which cattle, sheep, swine, and goats are slaughtered and the meat and meat food products thereof are prepared for interstate or foreign commerce as may be necessary to inform himself concerning the sanitary conditions of the same, and to prescribe the rules and regulations of sanitation under which such establishments shall be maintained; and where the sanitary conditions of any such establishment are such that the meat or meat food products are rendered unclean, unsound, unhealthful, unwholesome, or otherwise unfit for human food, he shall refuse to allow said meat or meat food products to be labeled * * * as 'Inspected and passed.'"

8. "That on and after October 1, 1906, no person, firm or corporation shall transport or offer for transportation, and no carrier of interstate or foreign commerce shall transport or receive for transportation from one state or territory or the District of Columbia to any other state or territory or the District of Columbia, or to any place under the jurisdiction of the United States, or to any foreign country, any carcasses or parts thereof, meat, or meat food products thereof which have not been inspected, examined, and marked as 'Inspected and passed,' in accordance with the terms of this act and with the rules and regulations prescribed by the Secretary of Agriculture: Provided, that all meat and meat food products on hand on October 1, 1906, at establishments where inspection has not been maintained, or which have been inspected under existing law, shall be examined and labeled under such rules and regulations as the Secretary of Agriculture shall prescribe, and then shall be allowed to be sold in interstate or foreign commerce."

17. "That no person, firm, or corporation engaged in the interstate commerce of meat or meat food products shall transport or offer for transportation, sell or offer to sell any such meat or meat food products in any state or territory or in the District of Columbia or any place under the jurisdiction of the United States, *other than in the state or territory or in the District of Columbia or any place under the jurisdiction of the United States in which the slaughtering * * * establishment owned, leased, or operated by said firm, person, or corporation is located unless and until said person, firm, or corporation shall have complied with all of the provisions of this act.*"

18. "That any person, firm, or corporation, or any officer or agent of any such person, firm, or corporation, who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and shall be punished on conviction thereof by a fine of not exceeding ten thousand dollars or imprisonment for a period of not more than two years, or by both such fine and imprisonment, in the discretion of the court."

19. "That the Secretary of Agriculture shall appoint from time to time inspectors to make examination and inspection of all cattle, sheep, swine, and goats, the inspection of which is hereby provided for, and of all carcasses and parts thereof, and of all meats and meat food products thereof, and of the sanitary conditions of all establishments in which such meat and meat food products hereinbefore described are prepared; and said inspectors shall refuse to stamp, mark, tag, or label any carcass or any part thereof, or meat food product therefrom, prepared in any establishment hereinbefore mentioned, until the same shall have actually been inspected and found to be sound, healthful, wholesome, and fit for human food, and to contain no dyes, chemicals, preservatives, or ingredients which render such meat food product unsound, unhealthful, unwholesome, or unfit for human food; and to have been prepared under proper sanitary conditions, hereinbefore provided for: and shall perform such other duties as are provided by this act and by the rules and regulations to be prescribed by said Secretary of Agriculture; and said Secretary of Agriculture shall, from time to time, make such rules and regulations as are necessary for the efficient execution of the provisions of this act, and all inspections and examinations made under this act shall be such and made in such manner as described in the rules and regulations prescribed by said Secretary of Agriculture not inconsistent with the provisions of this act."

21. "That the provisions of this act requiring inspection to be made by the Secretary of Agriculture shall not apply to animals slaughtered by any farmer on the farm and sold and transported as interstate or foreign commerce,

nor to retail butchers and retail dealers in meat and meat food products, supplying their customers: Provided, that if any person shall sell or offer for sale or transportation 'for interstate or foreign commerce any meat or meat food products which are diseased, unsound, unhealthful, unwholesome, or otherwise unfit for human food, knowing that such meat food products are intended for human consumption, he shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or by imprisonment for a period of not exceeding one year, or by both such fine and imprisonment: Provided also, that the Secretary of Agriculture is authorized to maintain the inspection in this act provided for at any slaughtering * * * establishment notwithstanding this exception, and that the persons operating the same may be retail butchers and retail dealers or farmers; and where the Secretary of Agriculture shall establish such inspection then the provisions of this act shall apply notwithstanding this exception."

Section 20 of the act also provides that any one bribing, by payment or gift, shall be deemed guilty of a felony and receive the punishment set forth in that section.

In the briefs which counsel for the accused have filed, the main argument seems to be based upon three propositions: (1) That the indictment only charges the violation of an unconstitutional and void regulation of the Department of Agriculture; (2) that there is nothing in the statute to indicate that the acts complained of are criminal offenses against the United States, and that the accused thereby have not made themselves liable to any penalty whatever; and (3) that the indictments seek to hold the accused for failure to have the meats reinspected after they had been previously marked "Inspected and passed," in accordance with the requirements of the act.

Counsel have also made the claim that the act itself is unconstitutional and void, on the ground that it permits the Secretary of Agriculture to prescribe certain rules which it is contended amounts in effect to additional legislation. This it is contended is an exclusive prerogative of the Congress, which has no constitutional power to delegate such authority to an administrative officer. No other question touching the constitutionality of the act has been raised.

[1, 2] If the constitutionality of the act and not the regulation be assumed, the real question here presented is whether the indictments charge violations of the act itself, even though they also charge, in conjunction therewith, violations of the regulation. If the indictments do sufficiently set forth facts showing violations of the act, then they must be held good, and the demurrers overruled, whether or not the accused, when violating the act, also neglected to comply with "an unreasonable or void regulation of the Secretary of Agriculture," as the eighteenth section of the act provides that any person, firm, or corporation, or the agent thereof, found guilty of violating any of the provisions of the act, shall be held guilty of a misdemeanor and liable to punishment.

It would also appear that Congress intended that certain acts, viz. those done in violation of the statutory provisions concerning inspection of cattle, meats, etc., and their shipment in interstate and foreign commerce, should be adjudged misdemeanors, no moral turpitude being involved, while those concerning bribery, which do involve moral turpitude, would, as they should, be punished as felonies.

The gist of the offenses charged is the offering for transportation in interstate commerce, and the transporting thereof into the establishment of a third person in another state than that where offered for shipment, certain fresh meats which had not been examined and inspected and marked or labeled "Inspected and passed," in conformity to the intent and provisions of the act requiring such examination, inspection, and marking, and in accordance with such appropriate rules and regulations as had been prescribed by the Secretary of Agriculture and authorized by the act.

At first glance one is quite apt to construe the indictments as only charging violations of the second paragraph of the third section of the eighteenth regulation prescribed by the Secretary of Agriculture, and it must be admitted that undue prominence has been given to the contents of that paragraph, especially in the first count of the indictment; but upon a closer study of the language used it becomes quite apparent that the indictments in fact allege violations of the act itself, viz. the attempt to and the actual shipping in interstate commerce of meats not marked "Inspected and passed" in conformity to the requirements of the statute, and that, in so far as regulation 18 is concerned, it was intended only to show that the Secretary of Agriculture had, as directed in the act, prescribed rules and regulations to govern the manner of inspection of meats and meat products, and that the same were in force at the time of the commission of the offenses charged. In other words, the allegations made in relation to the contents of the regulation can be treated as surplusage, without affecting the remainder of the allegations contained in the indictments as to the acts of the accused being violative of the intent and provisions of the Meat Inspection Act.

In view of the interpretation which I believe should be given the entire language of the indictments, it will be seen that much of the argument in behalf of the accused must prove of little effect in arriving at a solution of the questions raised by the demurrers, though it may not be out of place to say that the regulation very much resembles the style of language generally used in legislative measures, and, had the acts claimed to have been done by the accused not been within the prohibitions of the act itself, I should have deemed it proper to sustain the demurrers, on the ground that, in prescribing paragraph 2 of said regulation, the Secretary of Agriculture had in fact attempted to provide a rule of legislation, and had gone further than the provisions of the act seemed to warrant.

The allegations against the accused having been admitted by the demurrers, and in my view of the case being sufficient to show that they were guilty of a violation of the provisions of the eighth section of the act, whether because of failure to comply with the provisions of the sixth, seventeenth, or nineteenth sections thereof, or for some other cause, the demurrers on the point that the indictments show only a violation of an unconstitutional regulation of the Secretary of Agriculture must be overruled.

[3] The stated purpose of the Meat Inspection Act "is to prevent the use in interstate and foreign commerce of meat and meat food

products, which are unsound, unhealthful, unwholesome or otherwise unfit for human food," and it would seem that a purpose so obviously beneficial should receive the sanction and approval of the courts, unless in the face of an unquestionable constitutional prohibition against the right of the Congress to enact such legislation. Union Pacific R. R. Co. v. U. S., 99 U. S. 700, 25 L. Ed. 496.

[4] In view of this, and also of the fact that counsel do not appear to have seriously questioned the constitutionality of the act, other than in so far as it might be construed as permitting the Secretary of Agriculture to indulge in a matter of legislation, it would seem that no further consideration need be here given the question of the constitutionality of the act. U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, referred to and relied on by counsel for the accused, as supporting their contention, mainly concerned the construction to be accorded certain provisions of Oleomargarine Act Aug. 2, 1886, c. 840, 24 Stat. 209, section 5 of which (Comp. St. 1916, § 6217) required manufacturers of oleomargarine to keep such books, and render returns of materials and products in such a manner as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, "by regulation might require." This section, however, did not impose any penalty on such manufacturers as omitted or refused to keep such books or render such returns as were required by such regulations, nor did it or any part of it impose upon a dealer in oleomargarine the duty to keep like books, or render returns in the manner thus prescribed for manufacturers, unless such duty could be construed from the wording of another section (section 20 [Comp. St. 1916, § 6232]), which read "that the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may make all needful regulations for the carrying into effect of this act," and the wording of still another section (section 18 [Comp. St. 1916, § 6230]), providing "that if * * * any dealer * * * shall knowingly or willfully omit, neglect, or refuse to do * * * any of the things required by law for the carrying on or conducting of his business, * * * if there be no specific penalty or punishment imposed by any other section of this act for the neglecting, omitting, or refusing to do * * * the thing required, * * * he shall pay a penalty of one thousand dollars; and if the person so offending be the manufacturer of or a wholesale dealer in oleomargarine, all the oleomargarine owned by him, or in which he has any interest as owner, shall be forfeited to the United States."

It will therefore be seen that the question which the court in that case was called upon to decide was whether a wholesale dealer in oleomargarine, who had not kept such books or made the returns in the manner required by the regulations of the Commissioner of Internal Revenue, was necessarily guilty of a criminal offense because he had failed to do a thing "required by law in the carrying on or conducting of his business," within the intent and meaning of the above-quoted section, which imposed a penalty.

The Supreme Court held that, as the Secretary of the Treasury had no power to amend a revenue law by regulation, all he could lawfully

do was to regulate the mode of proceeding to carry into effect that which the Congress had enacted, and that this principle should be applied in a case where it was sought substantially to prescribe a criminal offense by the regulation of a department; that, as there are no common-law offenses against the United States, a principle of criminal law demanded that an offense which could be made the subject of criminal procedure was an act either committed or omitted in violation of a public law either forbidding or commanding it, and that it would be a very dangerous precedent to hold that a thing prescribed by the Commissioner of Internal Revenue as a needful regulation for carrying into effect an act of legislation might be considered as "a thing required by law" in such a manner as to become the subject of a criminal offense, where no penalty was imposed by the legislative act for failure to comply with such regulation, and that if the Congress had intended to make it a criminal offense for wholesale dealers in oleomargarine to omit or refuse to keep such books or render such returns as might be required by the regulations of the Commissioner of Internal Revenue it would have done so in distinct and positive language. The opinion contains the further statement that:

"Regulations prescribed by the President and by the heads of departments, under authority granted by Congress may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law."

It will be observed that in the Eaton Case the accused who were wholesale dealers in oleomargarine were charged with not having done certain things alleged to have been "required by law," while in the present cases the offenses charged are the offering for transportation to a common carrier, engaged in interstate commerce, for transportation from New Haven to New York City, and bringing into the establishment of a third person there, certain fresh meats, which, according to the wording of the indictments, "had not been examined and marked 'Inspected and passed,' contrary to the form of the statute in such case provided." On the other hand, in the statute applicable in the Eaton Case, there were no requirements that wholesale dealers in oleomargarine should keep a certain kind of book and make returns in accordance with rules or regulations to be prescribed by the Commissioner of Internal Revenue (although there was such a provision as to manufacturers), and the act failed to provide a penalty for such an omission even on the part of a manufacturer. The Meat Inspection Act contains provisions which prohibit the offering for transportation or for transporting in interstate commerce any meat or meat food products from certain kinds of animals, where such meat or meat products are intended for human consumption, unless the same shall have been examined and marked "Inspected and passed" by Inspectors appointed by the Secretary of Agriculture in accordance with rules and regulations which he was authorized by the act to prescribe, and that those who violated these provisions should be held subject to the penalty provided in the statute for such violations.

The circumstances of the Eaton Case and this one disclose such a difference as to the underlying facts and the law that it ought readily to be understood why the decision of the Supreme Court was favorable

to the accused while in this case it ought to be favorable to the government.

[5] There is nothing in the record here to sustain the contention made by counsel that the indictments were founded upon a failure to have the meats reinspected after they had been previously examined and marked "Inspected and passed," and it therefore becomes unnecessary to discuss what might have been the result in relation to such a situation as that suggested by counsel.

While it is true that Congress cannot delegate its legislative powers (Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294), it can, nevertheless, delegate authority to the proper administrative or executive officer to make administrative rules, violations of which may be punished as public offenses where the act of legislation which delegates the authority ordains that this be done (U. S. v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; In re Kollock, Petitioner, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; St. Louis & Iron Mountain Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061). There is nothing in the opinion of Mr. Justice Blatchford in the Eaton Case which is in any way contradictory of this view.

Notwithstanding that the regulation in question may have required acts to be done not strictly within the authority delegated by the acts of Congress to the Secretary of Agriculture, that fact can have no bearing upon the determination to be reached in this case, in view of the interpretation which I think ought to be placed upon the general language of the indictments.

The indictments in all cases are held sufficient and the demurrers are all overruled.

Ordered accordingly.