## PITTSBURGH MELTING COMPANY *v.* TOTTEN, INSPECTOR OF THE BUREAU OF ANIMAL INDUSTRY OF THE DEPARTMENT OF AGRICULTURE.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 28. Argued April 22, 1918.—Decided November 4, 1918.

Oleo oil, a substance made from the fat of slaughtered beeves, seldom used by itself as food, but employed largely in making oleomargarine and somewhat in cooking, is a "meat food product," within the Meat Inspection Act of 1906–1907, when manufactured fit for human consumption and not "denatured," and is debarred from interstate and foreign commerce unless first inspected and passed as by that act provided. P. 7.

So *held,* where the shipper labeled the product "inedible," asserting it was not intended for food purposes, but retained no control of the use and declined to certify, as required by regulations of the Secretary of Agriculture, that it was suitable for industrial purposes only, and incapable of being used as food by man.

232 Fed. Rep. 694, affirmed.

THE case is stated in the opinion.

(1)

*Mr. Samuel McClay*, with whom *Mr. William M. Robinson* and *Mr. Allen H. Kerr* were on the brief, for appellant:

The act is directed against meat-food products which are unfit for human food, and applies only to establishments whose products are for human consumption, not to those that prepare and sell exclusively oils intended for industrial purposes.

This view harmonizes with the purpose of the act as expressed in its title and with the construction by the Department of Agriculture in the regulations of April 1, 1908, which, with the approval of the Attorney General's opinion (28 Ops. Atty. Gen. 369, 377), restricted meat-food products to those intended for human use and limited the scope of the act, and jurisdiction under it, accordingly.

The regulations of November 1, 1914, extending the definition to products "capable of being used as food by man," and requiring appellant to certify that its products were not capable of being so used, are unreasonable; and exceed the intent of the act and the power of the Secretary of Agriculture under it. The words "meat" and "meat food products" cannot be separated from the purpose for which the products are to be used. *Commonwealth* v. *Schollenberger*, 153 Pa. St. 625.

The Secretary cannot by his regulations alter, amend, extend or modify the act of Congress. *Morrill* v. *Jones*, 106 U. S. 466; *United States* v. *11,150 lbs. of Butter*, 195 Fed. Rep. 657, 663; *St. Louis Independent Packing Co.* v. *Houston*, 215 Fed. Rep. 553, 559, 561. The act does not give him power over inedible grease intended solely for industrial purposes. There was no evidence that appellant was guilty of an attempted evasion. The Secretary may adopt such regulations not inconsistent with law as are necessary to carry out the purposes of the act, but the act confers no power whatever to determine what shall constitute a "meat" or a "meat food product." The meaning of those words, as used, is clear.

Congress cannot delegate legislative authority to an executive officer, and did not intend to do so.

If the meaning of the words, as used in the act, is doubtful, the construction which the Secretary placed upon them for a period of more than six years should have great if not controlling weight.

Appellant's product was tallow oil and not oleo oil.

Appellant rendered its oils from fats purchased from retail butchers and dealers (not subject to the act—§ 21), and from inspected wholesalers, and it had the right to ship them if they were not unhealthful or unwholesome, and even then, if they were intended for industrial and not for food purposes. The Secretary may impose inspection either on the retail dealer or butcher, but, until he elects to do so, neither the retail butcher or dealer nor his product are within the act. He could not require appellant to buy its fats from official establishments rather than retail butchers or dealers. The Department having withdrawn inspection for failure to accede to this demand, appellant thereafter shipped its product solely as inedible, and so marked it, in accordance with the regulations of 1908, certifying that it was intended for industrial uses. Purchasers were not deceived; if any of them converted the oils into a use for which they were not sold, appellant was in no way responsible.

Neither tallow nor oleo oil is ordinarily used as a food.

Denaturing is not practicable and is only adopted in cases of fats taken from diseased animals which have been condemned.

*Mr. Assistant Attorney General Frierson* for appellee:

Appellant's product is a meat-food product within the meaning of the act.

Being a food product, it is no less so because it may also be used for industrial purposes.

If an article is, in fact, a food product, its shipment

in interstate or foreign commerce without inspection is prohibited whether the manufacturer intended it for food or other purposes.

The evidence fails to show any good faith intention on the part of appellant to confine its product to industrial uses.

The validity or invalidity of the regulations called in question can not affect the decision of this case, since, if they were wholly void, appellant would not be entitled to ship its product in interstate or foreign commerce without inspection.

The regulations in question are, however, valid.

MR. JUSTICE DAY delivered the opinion of the court.

The Pittsburgh Melting Company filed a bill in the District Court of the United States for the Western District of Pennsylvania against the Baltimore & Ohio Railroad Company and G. E. Totten, Inspector of the Bureau of Animal Industry of the Department of Agriculture, seeking a mandatory injunction requiring the Railroad Company to receive and carry in interstate and foreign commerce shipments of oil, the manufacture of the Melting Company, and to restrain the Government Inspector from interfering with the shipments.

A decree in favor of the complainant was rendered in the District Court. 229 Fed. Rep. 214. Upon appeal this decree was reversed by the Court of Appeals, and the cause remanded to the District Court with directions to dismiss the bill. 232 Fed. Rep. 694.

The case arises under the Meat Inspection Act of 1906, 1907, c. 3913, 34 Stat. 674, 675; c. 2907, 34 Stat. 1260, 1262, 1265. The act provides an elaborate system of inspection of animals before slaughter, and of carcasses after slaughter and of meat-food products, with a view to prevent the shipment of impure, unwholesome, and

unfit meat and meat-food products in interstate and foreign commerce. The act in part provides:

"That for the purposes hereinbefore set forth the Secretary of Agriculture shall cause to be made by inspectors appointed for that purpose an examination and inspection of all meat food products prepared for interstate or foreign commerce in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and for the purposes of any examination and inspection said inspectors shall have access at all times, by day or night, whether the establishment be operated or not, to every part of said establishment; and said inspectors shall mark, stamp, tag, or label as 'Inspected and passed' all such products found to be sound, healthful, and wholesome, and which contain no dyes, chemicals, preservatives, or ingredients which render such meat or meat food products unsound, unhealthful, unwholesome, or unfit for human food; and said inspectors shall label, mark, stamp, or tag as 'Inspected and condemned' all such products found unsound, unhealthful, and unwholesome, or which contain dyes, chemicals, preservatives, or ingredients which render such meat or meat food products unsound, unhealthful, unwholesome, or unfit for human food, and all such condemned meat food products shall be destroyed for food purposes, as hereinbefore provided, and the Secretary of Agriculture may remove inspectors from any establishment which fails to so destroy such condemned meat food products. . . ."

And the act further provides:

"That on and after October first, nineteen hundred and six, no person, firm, or corporation shall transport or offer for transportation, and no carrier of interstate or foreign commerce shall transport or receive for transportation from one State or Territory or the District of Columbia to any other State or Territory or the District of Columbia, or to any place under the jurisdiction of the United

States, or to any foreign country, any carcasses or parts thereof. meat, or meat food products thereof which have not been inspected, examined, and marked as 'Inspected and passed,' in accordance with the terms of this Act and with the rules and regulations prescribed by the Secretary of Agriculture: . . ."

The facts appearing of record so far as we deem them necessary to the decision of the case are:

The Melting Company has long been engaged in rendering or converting animal fats into various products, including the oil which is the subject-matter of this controversy. At one time the Company made oleomargarine, but owing to adverse legislation of the State of Pennsylvania desisted from doing so. Government inspectors were in the works of the Melting Company and inspected and marked the products until 1909, when a controversy arose between the Company and the Government officers as to the purchase of the fats used by the Company. Upon refusal to comply with the orders of such officers, inspection was withdrawn. · Whether this action was right or not we do not stop to enquire, since the claim for relief is based upon the allegation that complainant's oil is not a meat-food product within the meaning of the statute.

After inspection was withdrawn, the Company continued to ship its oil, but did so under the then regulations of the Department of Agriculture concerning the shipment of fat for industrial use, as "inedible," and so marking the receptacle containing the same and making the certificate then required by the Department of Agriculture that it was inedible and not intended for food purposes. On November 1, 1914, the Department adopted a new regulation requiring a certificate to accompany the shipment of such fats claimed not to be food products, stating that the same "is not capable of being used as food by man, is suitable only for industrial purposes, is not for food purposes, and is of such character or for

such a use that denaturing is impracticable." The regulation permits the shipment of oil for industrial uses after it is "denatured," that is, treated with a substance which renders it unfit for food, while still fit for use in industrial purposes. The Melting Company refused to make this certificate, which resulted in the notice to the Railroad Company to refuse to carry the oil, and brought about this suit to compel the carrier to receive and transport it.

The District Court found that the oil manufactured and shipped by the Melting Company was not within the terms of the act, as it was not a meat-food product, which is prohibited from shipment without inspection. The reasons for reaching that conclusion are set forth in the opinion of the District Judge. 229 Fed. Rep. 214. The Circuit Court of Appeals reached the opposite conclusion upon the testimony adduced. 232 Fed. Rep. 694.

An examination of the record satisfies us that the Circuit Court of Appeals reached the right conclusion. The oil, here in controversy, the testimony shows is generally known as "oleo" oil, and is not "tallow" oil as that term is generally understood by the trade. Both oils are made from the fat of slaughtered beeves. Oleo oil by itself is seldom used as a food. It is, however, largely used in the manufacture of oleomargarine. In fact it constitutes a large percentage of that product. It is used in cooking for shortening purposes. Made as it is by the Melting Company it has no quality which prevents its use for such food purposes. It is not a tallow oil, distasteful and unfit to use in the making of food products. Without elaborating the discussion, we reach the conclusion that this product was clearly a "meat food product," within the meaning of the statute. It is true that the Melting Company does not sell it as such, and now marks it as "inedible." But that does not change the fact that a main use of such oil is in making edible products. The Company has no control over the use of the oil after it is shipped, and the record

does not disclose what use is made of a large percentage of its product which was shipped abroad at the time this action was begun.

The enactment of the statute was within the power of Congress in order to prevent interstate and foreign shipment of impure or adulterated meat-food products. The statute does not specifically define a meat-food product. In our view the product of the Melting Company is a meat-food product in the sense of the use of those terms in the statute, and as such subject to the regulations of the Secretary of Agriculture. It being such meat-food product the Melting Company could not truthfully claim that it was not capable of being used as food by man, and hence could not make the certificate required.

The theory of the bill is that the product in question was not within the terms of the act; the District Court reached the conclusion that this theory was the correct one, and so rendered a decree which required the Railroad Company to receive the oil for transportation in interstate and foreign commerce, without inspection, when labeled "inedible," and accompanied by the certificate of the Melting Company that such oil is inedible and not intended for food purposes and is of such a character that denaturing is impossible or will render the oil unavailable for the desired industrial use. This decree is consistent only with the finding of the District Court that the product was not a meat-food product within the meaning of the statute.

As we have said, we think the record shows, as found by the Circuit Court of Appeals, that the oil made and offered for shipment by the Melting Company was a meat-food product, and hence subject to the regulation of the statute requiring inspection before shipment. The decree requiring such oil to be shipped without inspection was properly reversed.

*Affirmed.*