## UNITED STATES v. HILSINGER et al.

(District Court, S. D. Ohio, W. D. October 26, 1922.)

Nos. 2205, 2206.

I. Intoxicating liquors ⊕⇒249—Prohibition agents held entitled without warrant to seize contraband from truck.

Prohibition agents *held* authorized without warrant to seize from a truck package stated by the driver to contain contraband liquor which was being transported for beverage purposes, and which on examination proved to contain such liquor.

2. Intoxicating liquors ⊕⇒249—Prohibition agents may search licensed brewery without warrant.

Prohibition agents, for the purpose of enforcement of the Prohibition Act, are vested with the powers granted inspectors by Rev. St. § 3177

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

(Comp. St. § 5900), and may without warrant enter a brewery engaged, under a permit from the Internal Revenue Department, in the manufacture of near beer, which is a taxable product, and may search for contraband and seize the same when found.

3. **Intoxicating liquors ☞247—Contraband liquor may be seized from receiver of state court.**

The fact that contraband liquor is made by and in possession of a receiver of a state court does not render it immune from seizure by federal prohibition agents.

Criminal prosecution by the United States against Michael Hilsinger and others. On application by defendant Hilsinger for return of property. Denied.

Thomas H. Morrow, U. S. Atty., and R. T. Dickerson, Asst. U. S. Atty., both of Cincinnati, Ohio.

Allen C. Roudebush and Edward M. Hurley, both of Cincinnati, Ohio, for defendants.

PECK, District Judge. This is an application for the return of property. The property of which return is sought proves to be six bottles and four barrels of beer, of alcoholic content varying from 1 to 4 per cent. by volume. The following facts are admitted: The petitioner, Hilsinger, has been the receiver of the Schaller Brewing Company, a corporation under the laws of Ohio, for a period of approximately 18 months, and is operating the brewery under an order of the court of insolvency authorizing him so to do. The business that he is so authorized to carry on and conduct is the manufacture and sale of the product commonly known as "near beer"—that is to say, beer the alcoholic content of which has been reduced to less than one-half of 1 per cent. by volume. The receiver, as such, is a permittee of the government of the United States, by the collector of internal revenue, under the regulations promulgated under the Volstead Act, for the development of such near beer from beer containing a higher alcoholic content. The court of insolvency has not authorized him to produce as a finished product, or manufacture for sale, beer containing one-half of 1 per cent., or in excess thereof, of alcohol by volume. He has not been directed by the court of insolvency to make application for the return of the property here seized. The searches and seizures had in this case were not upon any search warrant or under color of any search warrant.

It further appears from the evidence taken on this application that prior to September 9, 1922, the general prohibition agents, acting under the Commissioner of Internal Revenue, had direct knowledge of facts leading reasonably to no other conclusion than that the Schaller Brewing Company was supplying customers with real beer. On that day the general agent, together with subordinates, saw a truck being loaded with kegs at the Schaller Brewing Company, while Hilsinger, one of the applicants, being the receiver of the brewery, apparently stood lookout at the door, and, by gesture, directed the truck to start. The agents followed and detained the truck, which was making de-

liveries, and, having displayed their badges of authority, ordered the driver to drive to a place in the city where it seems the agents were in the habit of testing beer for alcoholic content. Upon being interrogated, the driver stated that he had, among others, four barrels which contained real beer, upon the truck, and pointed them out. The evidence upon this point is in some dispute. The driver has here testified to the contrary. Having regard to the way in which his testimony was given, the contradictory statements, the answers that he had no remembrance of things which obviously would lie within his memory, his general manner of testifying and appearance were such as to leave no doubt in my mind that I ought not to accept his testimony as against that of the agent in charge, who testified with apparent candor and directness.

They seized the four barrels so pointed out, which are those in question. All of those, upon analysis, turned out to contain beer of an alcoholic content of about 3.91 per cent. by volume. They detained the driver for a while, but later released him. Then they went to the brewery, where apparently they were admitted without controversy, made a similar display of authority to Hilsinger, the receiver in charge, called for the brewmaster, then forcibly prevented the turning out of certain beer in the taproom, and thereafter proceeded to inspect, investigate, and take samples from the beer contained in the various vats, barrels, and bottles in various parts of the building. The keg on draught in the taproom, which the employees were hurrying to turn into a sewer upon the appearance of the agents, was of alcoholic content of about 4 per cent. by volume. The agents found other kegs of similar content in the rackroom, ready for delivery. They also found bottled beer of alcoholic content from 1 to 1½ per cent. by volume.

The dealcoholization process in use at the brewery was simply the boiling out of ordinary beer, allowing the alcohol to escape, when transformed into a gas, into the air. The agents took samples from these various bottles and kegs. These samples, together with the four barrels seized from the truck, are the property of which the applicants, who are now under indictment for conspiracy to violate the Prohibition Act, seek the return, upon the ground that their constitutional rights have been invaded by the search and seizure aforesaid.

The questions involved are approached in the light of the instruction of the Supreme Court in the recent cases of Gouled, Amos, and Silverthorne (Touled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319) that the Fourth Amendment to the Constitution of the United States, guaranteeing the people immunity from unreasonable searches and seizures, is one that deals with a fundamental right, similar to the rights to trial by jury, due process of law, and habeas corpus. It is not to be frittered away by exceptions, or whittled down by judicial interpretation.

[1] The questions here presented involve the right to seize contraband articles in transit, in motion, when no reasonable opportunity

to obtain a search warrant is afforded, and the right to inspect industries where excisable articles are being produced. I know of no pronouncement of the Supreme Court dealing directly with either of these subjects in the light of the Fourth Amendment to the Constitution. I recognize the subject as being one of the utmost practical importance. On the one side stand the fundamental rights of which I speak, upon the other side stands the impossibility of enforcing the Eighteenth Amendment and the law, unless there is, under some circumstances, some opportunity for some such inspection as that in question.

Upon the evidence, there is no doubt in this case that the beer on the truck and in the rackroom and the taproom at the brewery was intended for sale for beverage purposes, in violation of the National Prohibition Act (41 Stat. 305). It would be simply to close our eyes to the patent facts to say otherwise. Therefore no property right existed in this beer. It was contraband. It was subject to seizure by the government of the United States wherever and whenever it could be lawfully got at by the officers. National Prohibition Act, §§ 25, 26. It therefore follows with certainty that there was nothing unlawful in the seizures provided the searches were lawful, and so the question to be considered is the right of the national prohibition agents to search, first, the truck, and, second, the brewery.

Inasmuch as the truck was being used in the unlawful transportation of intoxicating liquors, an offense against the United States was being committed in the actual presence of the officers, and was then and there admitted by the driver. This not only subjected the driver to arrest and prosecution, but the truck and its contents to forfeiture. Furthermore, it was perfectly apparent that the driver was acting in concert with others. Under the circumstances, it is thought that, if the federal officers, from the exercise of their own senses, coupled with information from sources so reliable that a prudent and careful person, having due regard for the rights of others, would act thereon, have reasonable and probable cause to believe that an offense of unlawful transportation is being committed in their presence, and have no opportunity to obtain a warrant, they may arrest, search, and seize.

The right to search one lawfully arrested is recognized in the case of Weeks v. United States, 232 U. S. at page 392, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. There is no doubt of the right to arrest without warrant in case of reasonable ground to believe that a felony has been committed and that the person present has committed it, or, when a misdemeanor is in process of being committed, in the presence of the arresting officer. And, under the authorities, in those sets of circumstances, the arresting officer may search and seize. 5 Corpus Juris, 401, 405, 416, 434; In re Morrill (C. C.) 35 Fed. 267. It is to be borne in mind that here the seizure was not merely of evidence. Such a seizure was condemned in the Gouled Case. The seizure here was of contraband, and, as I have said, properly subject to seizure if it could be properly got at. The federal courts seem generally to have recognized the

right to apprehend, search, and seize an automobile truck in transit with contraband liquor, when the officers have reasonable and probable cause, under the circumstances which I have pointed out. Elrod v. Moss (C. C. A.) 278 Fed. 123; United States v. Bateman (D. C.) 278 Fed. 231; United States v. Snyder (D. C.) 278 Fed. 650.

The question whether the officer must have direct knowledge of the contents of the package in transit is an interesting one. He never, by looking at the outside of a box, barrel, or bottle, can actually know what is inside of it. He may have good cause to believe from the label or from the looks of it, from reliable information, or from the situation and circumstances, but he never can know what is inside of it; and if there must be a search warrant issued upon direct evidence of the alcoholic contents of the vessel, first-handed evidence, it can never be seized, or practically so. A similar question has often arisen with regard to the carrying of concealed weapons, whether the officer must have first-hand knowledge that one has a concealed weapon before he can arrest him for carrying it. It has been held that an officer has a right, upon reasonable and probable cause, upon such information as would lead one having due regard to the rights of others to act, to arrest and search for carrying concealed weapons. Ballard v. State, 43 Ohio St. 341, 1 N. E. 76.

But in this case the driver had on his truck four barrels of a contraband article. He admitted that he had it. He pointed them out to the officers. And it is thought that under those circumstances there can have been no constitutional objection to the officers seizing them.

[2] As to the question of whether the officers had a right to inspect the brewery for contraband and seize:

By section 38 of the National Prohibition Act the Commissioner of Internal Revenue is authorized to appoint agents and inspectors. By section 2 thereof the Commissioner and his assistants, agents, and inspectors are charged with the duty of investigating and reporting violations of the act. By section 3177, Revised Statutes of the United States (Comp. St. § 5900), an inspector of the Internal Revenue Department may enter in the daytime any building or place where any objects subject to tax are being made, so far as is necessary for the purpose of examining the same. The owner is bound, under penalty, to admit him; and to forcibly obstruct him, or to attempt to rescue any article seized by him, is a penal offense. This provision is extended to revenue agents by section 3152 of the Revised Statutes (Comp. St. § 5856) and amendatory acts. By section 28 of the National Prohibition Act the Commissioner, his assistants, agents, and inspectors, have all the power in the enforcement of the provisions of the Prohibition Act which had been conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the laws of the United States.

Section 3177 aforesaid was undoubtedly an enactment for the enforcement of laws relating to the manufacture of liquor. In its original form the parent statute authorized the inspectors "to enter, in the daytime, any brewery, distillery, manufactory or place where any property, articles or objects subject to duty or tax under the act are

made, produced or kept." This is not thought to warrant a search or seizure elsewhere than in a place like a brewery or distillery, where such articles are avowedly made or kept; that is to say, it is thought that when one avowedly goes into the business of producing such articles, registers his manufactory with the collector of internal revenue, then it becomes subject and he subjects it to the provisions and terms of this statute. This statute is not thought to extend to all places where illegal manufacture is carried on. That would amount to a blanket warrant to search for excisable articles, void under the Constitution. To give this act a constitutional construction it seems to me that it must be restricted to breweries, distilleries, and like places where the manufacture of excisable articles is avowedly carried on.

Cereal beverages containing less than one-half of 1 per cent. by volume are subject to tax at the rate of 2 cents per gallon (Revenue Act of 1921, § 602a, 42 Stat. 285); cereal beverages having a greater alcoholic content at the rate of $6 per barrel (40 Stat. 1109, § 608 [Comp. St. Ann. Supp. 1919, § 6144bb]) continued in force by Act Nov. 23, 1921, c. 134, § 5, 42 Stat. p. 223. And by the National Prohibition Act this last tax is to be doubled, with a penalty of $500 added in the case of illegal manufacture or sale (National Prohibition Act, § 35), and is to be collected as other taxes are collected (Act Nov. 23, 1921, aforesaid). Therefore the agents in question are vested, for the purposes of the enforcement of the Prohibition Act, with the powers granted inspectors under section 3177 aforesaid. The brewery in question was a place where objects subject to tax were avowedly made. The brewery had to be registered, and the manufacturer had to be specially permitted by the Commissioner of Internal Revenue. The agents entered for the purpose of examining such articles or objects in the daytime. Therefore the only question is whether such a search was unreasonable and contrary to the Fourth Amendment to the Constitution of the United States.

It is recognized that the rights conferred by section 3177, Revised Statutes, are to be strictly limited by the terms of the act. United States v. Mann, 95 U. S. 580, 24 L. Ed. 531. But within its limitations they have been enforced by the Supreme Court. In United States v. Barnes, 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291, an indictment for violation of this act was sustained. There the indictment charged the obstruction of an officer in the entry into a manufactory of oleomargarine. The indictment was sustained. The constitutional question was not raised. No doubt seems to have been entertained that it was constitutional. The question was whether it could properly be extended to a place where oleomargarine was manufactured.

The production of alcoholic liquors has always been a matter of governmental surveillance, to which, it has been considered, the manufacturer submits when he enters upon the business. See the full discussion of this subject in United States v. Three Tons of Coal, 28 Fed. Cas. 157, No. 16,515. The entry and inspection of industrial establishments under executive regulations to secure compliance with law does not seem to have been regarded as amounting to unreason-

able search. See the Meat Inspection Act of March 4, 1907 (34 Stat. 1260; Comp. St. § 8681), and the case of Pittsburgh Melting Co. v. Totten, 248 U. S. 1, 39 Sup. Ct. 3, 63 L. Ed. 97, where it was held that the Meat Inspection Act was within the powers of Congress. It is well known that meat inspectors are placed in the slaughterhouses where the meat is inspected. They inspect each piece and stamp it if in accordance with the government requirements. Yet that is not an unreasonable search. See, also, the case of United States v. Cudahy (D. C.) 243 Fed. 441.

This brewery was operated, not as a matter of right, but by the permission of the Commissioner of Internal Revenue. The government had a direct interest in the articles produced, because they were subject to tax. The permittee gave bond to comply with the Internal Revenue Laws and Regulations 60 (pages 87, 91, and 94). Therefore it is concluded that it was not unreasonable for the government, under those circumstances, under specific warrant of law, to the exercise of which the permittee must be assumed to have assented, to enter the premises of such a manufactory and to examine the excisable products to determine whether the conditions of the permit were or were not being observed. O'Connor v. United States (D. C.) 281 Fed. 396.

I put to one side the question whether the defendant Hilsinger, as an individual, has a right to raise the constitutional question for the alleged invasion of the constitutional rights of the brewing company of which he was receiver.

[3] It is argued also that this property was immune from seizure because in the possession of the state court under a receivership. The doctrine that property in the possession of the state court is immune from seizure by federal officers ceases to have any application when such seizure is necessary to the maintenance of the supremacy of the Constitution and laws of the United States. 1 Foster's Federal Practice, § 59. It is so with regard to bankruptcy, and must necessarily be so with regard to the enforcement of the criminal laws of the federal government. Nor is it thought that comity in this instance requires hesitation, because it is not to be supposed, and it would not be comity to suppose, that the receiver manufactured this illicit liquor for sale for beverage purposes pursuant to any authority, express or implied, conferred upon him by the state court.

Therefore it is concluded that the petition for the restoration of the property must be denied, and the motion to exclude it from evidence, so far as shown by the present situation in this case, must also be overruled.

Proper exceptions may be noted.