## UNITED STATES v. WESTMORELAND BREWING CO., Inc., et al.

(District Court, W. D. Pennsylvania.   March 2, 1923.)

1. **Intoxicating liquors ☞246, 325—Beer intended for beverage purposes contraband, and subject to seizure.**

Beer containing more than one-half of 1 per cent. of alcohol was contraband, and no property right existed in it, and it was subject to seizure by prohibition officers under National Prohibition Act, tit. 2, §§ 25, 26 (Comp. St. Ann. Supp. 1923, §§ 10138½m, 10138½mm).

2. **Intoxicating liquors ☞249—Searches and seizures ☞7—Prohibition agents had right to search brewery without warrant.**

Prohibition agents had the right to enter the premises of a brewery and examine the excisable products, to determine whether there was compliance with conditions of permit that brewery would not violate any of the provisions of the National Prohibition Act, or regulations promulgated thereunder, or any other laws of the United States respecting liquors, and could without a search warrant examine beer and seize it, where it contained more than one-half of 1 per cent. of alcohol; such seizure not being unreasonable under Const. Amend. 4, especially in view of National Prohibition Act, tit. 2, §§ 2, 28, 38 (Comp. St. Ann. Supp. 1923, §§ 10138½a, 10138½o, 10138½y), and Rev. St. §§ 3152, 3177 (Comp. St. 1916 or 1918, §§ 5856, 5900).

In Equity.   Suit by the United States against the Westmoreland Brewing Company, Inc., and others.   Defendants were adjudged guilty of contempt.

Affirmed 294 Fed. 740.

Walter Lyon, U. S. Atty.; and A. W. Henderson and George V. Moore, Asst. U. S. Attys., all of Pittsburgh, Pa., for the United States.

John Duggan, of Uniontown, Pa., for defendants.

SCHOONMAKER, District Judge.   This is a criminal contempt proceeding, under the provisions of section 24, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ll), under the provisions of which, in case of violation of any injunction, temporary or permanent, the court may summarily try and punish the defendant. By the provisions of this section, the proceedings for contempt are commenced by filing, with the clerk of the court from which the injunction issued, information under oath, setting out the alleged facts constituting the violation.   The section further provides for the issuing of a warrant, the arrest of the defendant, and his trial, either upon affidavits or upon oral testimony of witnesses.

In this case witnesses were produced and orally examined at the trial.   The information filed charges the violation by the defendants above named of the temporary injunction issued by this court, in an action in equity at No. 742, November term, 1922, between the United States of America as complainant, and the Westmoreland Brewing Company as defendant, wherein and whereby the said defendant, and its officers, agents, servants, assigns, trustees, employees, and all others to whom such temporary injunction should come, were enjoined, pending the hearing and determination of said action in equity, from

manufacturing, selling, keeping, or bartering any intoxicating liquor, as defined in section 1, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½), upon the premises of said corporation located at Sutersville, within the Western district of Pennsylvania.

At the trial, before any evidence was offered, the individual defendants above named filed a demurrer to the information against them, alleging that there was no sufficient charge against them as individuals, and alleging, first, that the information charged no contempt against them; second, that the information did not charge them with being officers of the defendant corporation; third, that the affidavit on which this information was based charges no contempt against them; fourth, that the information charges more than one offense; fifth, that the information does not constitute an offense under the laws of the United States; sixth, that the information does not charge that the alleged contemners knowingly violated the injunction order of July 29, 1922.

We believe that the information in this case stated sufficient facts to charge the individual defendants, and demurrer was overruled. No demurrer or answer was filed by the defendant corporation. The trial proceeded with the oral testimony of witnesses, and at the conclusion thereof the individual defendants moved the court for a finding of "not guilty" as to them. From the testimony produced before the court in the trial of the above case, the court finds:

That the defendant Westmoreland Brewing Company, Inc., and its officers, Louis Brown, president, Maurice Farkas, secretary, and Charles Messner, treasurer, were, on December 27, 1922, guilty of contempt of court, under the provisions of said section 24, title 2, of the National Prohibition Act, in that they, on said date, violated the injunction order issued by the United States District Court for the Western District of Pennsylvania, July 29, 1922, in an action in equity in which the United States of America was complainant, and the Westmoreland Brewing Company, Inc., was defendant, by keeping and manufacturing on the premises of the said company in Sutersville, in the Western district of Pennsylvania, intoxicating liquor, as defined in section 1, title 2, of the National Prohibition Act, as charged in the information filed herein. The court further finds that the defendants Max Friedman, Henry Friedman, Jacob Roth, James Brown, and Louis Farkas were neither officers nor agents of the corporation at the time of the violation of said National Prohibition Act, and that they are not guilty of contempt of court, and that proceedings as to them should be dismissed.

It was strongly urged, upon the trial of this case, that the evidence of the violation of this injunction order was obtained by the general prohibition agents in violation of the defendant's constitutional rights, in the Fourth and Fifth Amendments to the Constitution of the United States; that the evidence in this case was obtained through searches and seizures made without the authority of search warrant. From the evidence, it appears that the general prohibition agents of the United States went to the brewery of the defendant corporation on December 27, 1922, in the daytime, and found the employees of the defend-

ant corporation in the act of loading a freight car on the Baltimore & Ohio siding directly in front of the Westmoreland Brewing Company's racking room. At the time the agents arrived there were barrels of beer on the car, on the paved roadway between the car and the platform in front of the racking room, on the platform itself, and in the racking room. Samples were taken by the general prohibition agents from beer in the freight car, on the roadway, in the racking room, and on the platform. It was found to contain alcohol of over 3 per cent. by volume, with the exception of some samples taken from a barrel in the racking room, which contained less than one-half of 1 per cent. of alcohol.

[1] Under the evidence, there can be no doubt that the beer in the freight car, on the Baltimore & Ohio siding, in the barrels on the roadway between the siding and the platform in front of the racking room, and the beer on the platform itself, contained more than one-half of 1 per cent. of alcohol and was intended for beverage purposes. In fact, no evidence was offered by the defendants to show that the beer in question contained less than one-half of 1 per cent. of alcohol by volume. This beer, therefore, was contraband, and no property right existed in it. National Prohibition Act, §§ 25, 26, title 2 (Comp. St. Ann. Supp. 1923, §§ 10138½m, 10138½mm). It was subject to seizure by the United States whenever and wherever it could be lawfully seized. In the seizure itself, in this case, there was nothing unlawful, provided the searches were lawful.

[2] We are of the opinion that the revenue agents in this case had the absolute right of seizure and search under the provisions of law and the Constitution of the United States. The familiar cases of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Gould v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; and Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654—give full and broad effect to the Fourth and Fifth Amendments to the Constitution, and we have not overlooked them. But in the case at bar we have the case of a brewery that was operated, not as a matter of right, but by permission of the Commissioner of Internal Revenue. The government had a direct interest in the articles produced, because they were subject to tax. The permittee gave a bond, conditioned that the permittee would not violate any of the provisions of the National Prohibition Act and regulations promulgated thereunder, or any other laws of the United States respecting distilled, spirituous, or other intoxicating liquors, conditioned further for the payment of all taxes, assessments, fines, and penalties incurred or imposed by law.

Under these circumstances, it seems to be reasonable that the government had the right to enter the premises of the brewery and examine the excisable products, to determine whether the conditions of the permit were or were not being observed. This is not the case of a private dwelling house; here we have a brewery that was a place of business open to the public. The products of the brewery were,

at the time the agents arrived, being transferred from the racking room of the brewery to a railroad car on a siding of the Baltimore & Ohio Railroad; and it seemed to be entirely reasonable that the government should make searches through its authorized agents. It will be noted that reasonable searches and seizures are not forbidden by the Fourth Amendment to the Constitution, and that there is no inhibition against making either without a warrant. O'Connor v. U. S. (D. C.) 281 Fed. 396.

There is also direct warrant of law for the national prohibition agents to inspect the brewery for contraband and to seize the same. By section 38, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½y) the Commissioner of Internal Revenue is authorized to appoint agents and inspectors. By section 2, title 2 (Comp. St. Ann. Supp. 1923, § 10138½a) thereof, the Commissioner of Internal Revenue, his assistants, agents, and inspectors, are charged with the investigating and reporting of violations of the act. By section 3177 of the Revised Statutes of the United States (Comp. St. 1916 or 1918, § 5900), an inspector of the Internal Revenue Department may enter, in the daytime, any place where any articles or objects subject to tax are being made. This provision is extended to revenue agents by section 3152 of Revised Statutes and amendatory acts (Comp. St. § 5856). By section 28, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½o), the Commissioner of Internal Revenue, his assistants and inspectors, are given all the power and protection in the enforcement of this act, or any provisions thereof, which are conferred by law for the enforcement of existing laws relating to the manufacture and sale of intoxicating liquors under the laws of the United States. Section 3177 aforesaid was undoubtedly an enactment for the enforcement of law, and authorizes any inspector of the Internal Revenue Department to enter, "in the daytime, any brewery, distillery, manufactory or place where any probable article subject to duty or tax under the act, are made, produced or kept."

Cereal beverages containing less than one-half of 1 per cent. alcohol by volume are subject to tax at the rate of 2 cents per gallon (Revenue Act 1921, § 600 [a], being Comp. St. Ann. Supp. 1923, § 5986e); cereal beverages having a greater alcoholic volume than one-half of 1 per centum, at the rate of $6 per barrel containing not more than 31 gallons, and at a like rate for any other quantity or for the fractional parts of a barrel authorized and defined by law (40 Stat. 1109, § 608, continued in force by Act Nov. 23, 1921, c. 134, § 5, p. 222 [Comp. St. Ann. Supp. 1923, §§ 10138⅘c, 10138⅘d]). By the National Prohibition Act, this last tax is to be doubled, with the penalty of $500 added on retailers and $1,000 on manufacturers. Section 35, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½v).

We therefore conclude that the national prohibition agents are, for the purpose of the enforcement of the Prohibition Act, vested with the power of inspectors, under section 3177 of the Revised Statutes of the United States aforesaid. The brewery in question here was a

place where objects subject to tax were made, the brewery had to be registered, the manufacturer had to be specially permitted by the Commissioner of Internal Revenue to make beer, and the United States revenue inspectors or agents entered the brewery for the examination of such beer in the daytime. Rights conferred by section 3177 have been enforced by the Supreme Court of the United States. U. S. v. Barnes, 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291. The production of alcoholic liquors has always been a matter of surveillance, to which it has been construed the manufacturer submits when he enters upon the business.

We have the case of oleomargarine inspectors and meat inspectors, national bank examiners, who lawfully enter places of business and manufactories without the authority of any search warrant, and are vested by law with summary powers. These cases have all been upheld by the Supreme Court of the United States. Among the cases may be noted the case of United States v. Three Tons of Coal, 28 Fed. Cas. 157, No. 16,515; Pittsburgh Moulding Co. v. Totten, 248 U. S. 1, 39 Sup. Ct. 3, 63 L. Ed. 97; United States v. Cudahy Packing Co. (D. C.) 243 Fed. 441.

We therefore conclude that, so far as any beer was seized in the racking room of the brewery, it was lawfully seized, as the general prohibition agents had the legal right to enter the premises and inspect the articles or objects being produced. Then, as to the product that was found outside the brewery on the platform, in front of the roadway, on the paved roadway, and in the railroad car on the Baltimore & Ohio Railroad, there can be no question that the inspector and agent had full right to inspect that beer in transit or being made ready for transit and out in the open.

The views we have expressed herein are in accord with the views of Peck, District Judge of the Southern District of Ohio, in the case of U. S. v. Hilsinger et al., 284 Fed. 585, at Nos. 2205, 2206, Criminal Cases, on October 26, 1922. Judge Peck declined to return beer that was seized in a brewery without a search warrant, holding that the beer was properly seized without a search warrant, under the circumstances of the case.

Some questions were raised as to the knowledge of the injunction order on the part of some of the individual defendants. We find that, at the time of the violation of the court's injunction order, Louis Brown was president, Maurice Farkas was treasurer, and Charles Messner was secretary of the corporation. These three constituted the board of directors. It appears by the testimony that they all knew of the injunction order issued by this court. This injunction order, although it was served upon Maurice Friedman, formerly secretary and manager of the corporation (who after that period on several occasions acted in behalf of the corporation as its agent in the matter of getting permit to conduct the dealcoholizing plant), was nevertheless made known to all of the three individual defendants named. The president, Louis Brown, said that he knew it, and at their directors' meeting they warned each other to comply with the court's order.

This corporation was engaged in the brewing and manufacture of beer, and we do not think the brewery could manufacture this product with the alcoholic volume contained, without the full knowledge and authority of the officers named. As to the other individual defendants named, there seems to be no sufficient evidence to connect them in any way with the violation of this injunction order. They were not officers or directors at the time of the alleged violation, and, although some of them had been officers prior to that date, they had resigned.

Formal order may be entered dismissing the proceeding herein as to the defendants Max Friedman, Henry Friedman, Henry Roth, and Louis Farkas, and the other defendants will appear before the court, when adjudication of contempt of court will be entered against them. Proper exception may be noted.