**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONAL MEAT ASSOCIATION,
          *Plaintiff-Appellee,*

and

AMERICAN MEAT INSTITUTE,
          *Plaintiff-intervenor,*

v.

EDMUND G. BROWN, in his official capacity as Attorney General of California; ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; STATE OF CALIFORNIA,
          *Defendants-Appellants,*

and

THE HUMANE SOCIETY OF THE UNITED STATES; FARM SANCTUARY, INC.; HUMANE FARMING ASSOCIATION; ANIMAL LEGAL DEFENSE FUND,
          *Defendant-intervenors.*

No. 09-15483

D.C. No.
1:08-cv-01963-
LJO-DLB

NATIONAL MEAT ASSOCIATION,
                    *Plaintiff-Appellee,*

and

AMERICAN MEAT INSTITUTE,
                    *Plaintiff-intervenor,*

v.

EDMUND G. BROWN, in his official
capacity as Attorney General of
California; ARNOLD
SCHWARZENEGGER, in his official
capacity as Governor of
California; STATE OF CALIFORNIA,
                    *Defendants,*

and

THE HUMANE SOCIETY OF THE
UNITED STATES; FARM SANCTUARY,
INC.; HUMANE FARMING
ASSOCIATION; ANIMAL LEGAL
DEFENSE FUND,
  *Defendant-intervenors-Appellants.*

No. 09-15486

D.C. No.
1:08-cv-01963-
LJO-DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
August 11, 2009—San Francisco, California

Filed March 31, 2010

Before: Alex Kozinski, Chief Judge, Stephen Reinhardt and
Barry G. Silverman, Circuit Judges.

Opinion by Chief Judge Kozinski

## COUNSEL

Edmund G. Brown Jr., Attorney General of California, Douglas J. Woods, Acting Senior Assistant Attorney General, and Susan K. Leach, Deputy Attorney General, Los Angeles, California, for the defendants-appellants.

Sarah L. Conant and Peter A. Brandt, The Humane Society of the United States, Washington, D.C.; and Bruce A. Wagman, Schiff Hardin LLP, San Francisco California, for the defendant-intervenor-appellants.

Steven J. Wells and Heather M. McCann, Dorsey & Whitney LLP, Minneapolis, Minnesota, for the plaintiff-appellee.

## OPINION

KOZINSKI, Chief Judge:

This is an interlocutory appeal from a preliminary injunction prohibiting the enforcement of California Penal Code

§ 599f, which bans the slaughter and inhumane handling of nonambulatory animals, against federally regulated swine slaughterhouses.

# I

On January 30, 2008, The Humane Society released a video depicting images of nonambulatory cows—cows that are unable to stand or walk without assistance—being kicked, electrocuted, dragged with chains and rammed with forklifts at California's Westland/Hallmark slaughterhouse. Footage also showed some workers trying to get nonambulatory cows to stand by spraying pressurized water into their noses to simulate drowning. Public health professionals warned that meat from these "downer" cows was more likely to be diseased, partly because animals can become nonambulatory due to disease and partly because downer animals grow sicker as they end up rolling around in other animals' refuse. The video triggered the largest beef recall in United States history.

California responded by amending California Penal Code § 599f to provide that:

> (a) No slaughterhouse, stockyard, auction, market agency, or dealer shall buy, sell, or receive a nonambulatory animal.

> (b) No slaughterhouse shall process, butcher, or sell meat or products of nonambulatory animals for human consumption.

> (c) No slaughterhouse shall hold a nonambulatory animal without taking immediate action to humanely euthanize the animal.

> . . . .

> (e) While in transit or on the premises of a stockyard, auction, market agency, dealer, or slaughter-

house, a nonambulatory animal may not be dragged at any time, or pushed with equipment at any time, but shall be moved with a sling or on a stoneboat or other sled-like or wheeled conveyance.

Cal. Pen. Code § 599f. Together these provisions: (1) ban the receipt and slaughter of downer animals, *id.* § 599f(a)-(c); and (2) require the humane handling of downer animals, *id.* § 599f(e).

Shortly before amended section 599f was to take effect, National Meat Association (NMA)—a trade association representing packers and processors of swine livestock and pork products—filed suit in federal district court against the State of California seeking declaratory and injunctive relief barring the application of section 599f to federally inspected swine slaughterhouses.[1] Some of its members claimed that section 599f would prevent the slaughter of approximately 2.5% of their pigs. NMA argued that section 599f is preempted by the Federal Meat Inspection Act (FMIA), violates the dormant commerce clause and is unconstitutionally vague. The district court entered a preliminary injunction on preemption grounds;[2] the State of California and defendant-intervenors The Humane Society, et al., who supported the bill amending section 599f, bring this interlocutory appeal.

## II

We review for abuse of discretion and will reverse if the district court's decision is based on an erroneous legal standard or clearly erroneous finding of fact. *Stormans, Inc.* v. *Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). Preemption is

---

[1]American Meat Institute, a trade association which represents meat packagers and processors, intervened as a plaintiff but didn't seek preliminary relief.

[2]The district court didn't reach the dormant commerce clause and vagueness claims. Neither do we.

a legal issue we review de novo. *Am. Trucking Ass'ns* v. *City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Someone seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter* v. *Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).[3]

### Receipt and Slaughter Ban

**[1]** Congress, as well as federal agencies, may expressly or impliedly preempt state law. *Barrientos* v. *1801-1825 Morton LLC*, 583 F.3d 1197, 1208 (9th Cir. 2009). There is express preemption where federal law explicitly preempts state law. *Altria Group, Inc.* v. *Good*, 129 S. Ct. 538, 543 (2008). There is implied preemption where federal law was intended to occupy the legislative field or where state law conflicts with federal law, either because it's impossible to comply with both laws or because state law stands as an obstacle to accomplishing the purposes of federal law. *See id.*; *English* v. *Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). In either case, there's a strong presumption against preemption, especially when the state law deals with matters like health and animal welfare, which have historically been regulated by states. *See Wyeth* v. *Levine*, 129 S. Ct. 1187, 1194-95 n.3 (2009).

**1. Express Preemption.** NMA argues, and the district court held, that the FMIA expressly preempts section 599f's

---

[3]The district court applied our pre-*Winter* "sliding scale" approach, which required only a "possibility of irreparable injury" if plaintiff is likely to succeed on the merits. *See Stormans*, 586 F.3d 1126-27. In some instances, this error may require remand for application of the *Winter* standard. Here, however, the district court found that NMA is likely to succeed and faces a significant threat of irreparable injury, and that the balance of the equities and the public interest favors NMA. These findings enable us to review the injunction under *Winter* without remanding for application of the new standard.

ban on the receipt and slaughter of nonambulatory animals. Under the FMIA, all animals are sent to federal inspection before they enter a slaughterhouse where they are to be slaughtered for meat capable of human consumption that will be sold in commerce. 21 U.S.C. § 603(a). Regulations pursuant to the FMIA require nonambulatory animals to be classified as "U.S. Suspect" and held for further examination. 9 C.F.R. § 309.2(b). If the downer animal shows signs of certain diseases upon inspection, it must be classified as "U.S. Condemned" and disposed of according to specific procedures. *See id.* §§ 309.4-309.18. But if the animal passes inspection, it may be slaughtered and sold for human consumption. *See generally id.* § 309.2.[4]

**[2]** The FMIA contains an express preemption provision:

> Requirements within the scope of this chapter with respect to *premises, facilities and operations* of any establishment at which inspection is provided under subchapter I of this chapter, which are in addition to, or different than those made under this chapter may not be imposed by any State . . . .

21 U.S.C. § 678 (emphasis added). Consistent with the presumption against preemption, we must give this provision a narrow interpretation. *See Air Cond. & Refrig. Inst.* v. *Energy Res. Conserv. & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005). More so because section 678 explicitly preserves for the states broad authority to regulate slaughterhouses: "This chapter shall not preclude any State . . . from making requirement[s] or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter." 21 U.S.C. § 678.

---

[4]All nonambulatory cattle, however, must be classified as U.S. Condemned and may not be slaughtered for human consumption. *See* 9 C.F.R. § 309.3(e).

**[3]** Starting, as we should, with the language of the statute, we find no express preemption. Section 678 preempts state regulation of the "premises, facilities and operations" of slaughterhouses, and section 599f(a)-(c) deals with none of these. Rather, it regulates the kind of animal that may be slaughtered. Two circuits have held that the FMIA doesn't preempt state laws that do precisely that. *Cavel Int'l, Inc.* v. *Madigan*, 500 F.3d 551 (7th Cir. 2007) (state ban on horse slaughter not preempted); *Empacadora de Carnes de Fresnillo* v. *Curry*, 476 F.3d 326 (5th Cir. 2007) (same). These cases explain that "[the FMIA] preemption clause expressly limits states in their ability to govern meat inspection and labeling requirements. It in no way limits states in their ability to regulate what types of meat may be sold for human consumption in the first place." *Empacadora*, 476 F.3d at 333. "*Given* that horse meat is produced for human consumption, its production must comply with the [FMIA]. But if it is not produced, there is nothing, so far as horse meat is concerned, for the Act to work upon." *Cavel*, 500 F.3d at 554. This makes horse sense: Federal law may establish fireworks safety standards, but that doesn't preclude states from banning fireworks. Similarly, the FMIA establishes inspection procedures to ensure animals that are slaughtered are safe for human consumption, but this doesn't preclude states from banning the slaughter of certain kinds of animals altogether.

The district court sought to distinguish *Cavel* and *Empacadora*: "A nonambulatory pig is not a 'type of meat.' A pig is a pig. A pig that is laying down is a pig. A pig with three legs is a pig. A fatigued or diseased pig is a pig. Calling it something else does not change the type of meat produced." In effect, the district court reasoned that states may ban the slaughter of certain species, but once a state allows a species to be slaughtered, it cannot impose further restrictions. Hogwash.

**[4]** States aren't limited to excluding animals from slaughter on a species-wide basis. What if a state wanted to ban the

slaughter of a specific breed of pig but not the entire species? Or to allow wild dogs and horses to be slaughtered, but not domesticated companions? And what if, in response to a population problem, a state only banned the slaughter of female cattle? Or, perhaps due to ethical concerns, prohibited the slaughter of pregnant or newborn animals, or the slaughter of non-free-range animals? Regulating what kinds of animals may be slaughtered calls for a host of practical, moral and public health judgments that go far beyond those made in the FMIA. These are the kinds of judgments reserved to the states, and nothing in the FMIA requires states to make them on a species-wide basis or not at all. Federal law regulates the meat inspection process; states are free to decide which animals may be turned into meat.

It is possible that a state may go too far in regulating what "kind of animal" may be slaughtered. For example, a state may feel that federal inspection standards for diamond-skin disease (9 C.F.R. § 311.6), arthritis (*id.* § 311.7) or sexual odor of swine (*id.* § 311.20) are too lenient. The state may try to establish stricter inspection standards, and style the new standards as a regulation of the "kind of animal" that may be slaughtered: "The kind of pig that tests positive under procedure X for sexual odor may not be slaughtered." Or enforcement of a state regulation of what "kind of animal" may be slaughtered might require certain inspections: "Pigs with arthritis may not be slaughtered. Slaughterhouses shall perform Y and Z procedures to screen for the condition." Such regulations could effectively establish a parallel state meat-inspection system.

**[5]** We need not decide what limits the express preemption provision places on such regulations. California's prohibition of the slaughter of nonambulatory animals does not duplicate federal procedures; it withdraws from slaughter animals that are unable to walk to their death. This prohibition doesn't require *any* additional or different inspections than does the FMIA, and is thus not a regulation of the "premises, facilities

and operations" of slaughterhouses. There is no express pre-emption here.

**[6] 2. Implied Preemption.** NMA's implied preemption claim concerning section 599f's ban on the receipt and slaughter of nonambulatory animals fares no better. That 21 U.S.C. § 678 specifies "[t]his chapter shall not preclude any State . . . from making requirement[s] or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter" shows that Congress didn't intend to occupy the field of slaughterhouse regulation, so only conflict preemption is at issue. Conflict preemption is a demanding standard, as courts won't "seek[ ] out conflicts between state and federal regulation where none clearly exists." *English*, 496 U.S. at 90 (internal quotation marks omitted).

**[7]** It's not physically impossible to comply with both section 599f and the FMIA. FMIA inspection requirements apply to animals that are to be slaughtered for human consumption. *See* 21 U.S.C. §§ 603(a), 641. And nothing in the FMIA *requires* the slaughter of downer animals for human consumption. NMA hangs its impossibility argument on words like "shall" in the federal regulations—for example, "[a]ll . . . non-ambulatory disabled livestock *shall* be identified as U.S. Suspects and disposed of as provided in § 311.1 of this subchapter unless they are required to be classed as condemned under § 309.3." 9 C.F.R. § 309.2(b) (emphasis added). But these regulations don't require the slaughter of downer animals; no slaughterhouse operator would be fined by federal authorities if he gave nonambulatory animals medical care and put them up for adoption as pets. Federal regulations require inspection *if* downer animals are to be slaughtered. *See Cavel*, 500 F.3d at 553-54 ("When the [FMIA] was passed . . . it was lawful in some states to produce horse meat for human consumption, and since the federal government has a legitimate interest in regulating the production of human food . . . it was natural to make the Act applicable to horse meat. That was not a deci-

sion that states must allow horses to be slaughtered for human consumption.").[5] Whether they may be slaughtered is up to the states.

[8] Section 599f also isn't an obstacle to accomplishing the purposes of the FMIA.[6] The FMIA was adopted to protect the health and welfare of consumers "by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 602; *Pittsburgh Melting Co.* v. *Totten*, 248 U.S. 1, 4-5 (1918); *see also United States* v. *Stanko*, 491 F.3d 408, 416-17 (8th Cir. 2007). Its purpose is certainly not to preserve the slaughter of any kind of animal for human consumption. *Cavel*, 500 F.3d at 554. Nor do we see any indication that Congress intended to leave the choice of what kinds of animals to slaughter to individual slaughterhouses. *Compare Fla. Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 147-48 (1963) (federal law meant only to establish uniform minimum standards of avocado quality to which states could add), *with Geier* v. *Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) ("no airbag" tort claim preempted because federal law sought

---

[5]NMA argues that, for the few animals that become nonambulatory after being presented for federal inspection (rather than arriving at the slaughterhouse nonambulatory), federal authorities must give their permission for release of these animals. That's because 9 C.F.R. § 309.2(p) says that, after an animal has been presented for inspection, "[w]hen a suspect is to be released . . . for a purpose other than slaughter, the operator of the official establishment or the owner of the animal shall first obtain permission for the removal of such animal . . . ." But state and local officials may also release animals for purposes other than slaughter. 9 C.F.R. § 309.2(p). Moreover, there's no reason to suppose that federal officials wouldn't willingly give permission to euthanize downer animals. *Cf. Wyeth*, 129 S. Ct. at 1198 ("[A]bsent clear evidence that the FDA would not have approved a change to Phenergan's label, we will not conclude that it was impossible for Wyeth to comply with both federal and state requirements.").

[6]Contrary to NMA's argument that California waived its objection to the district court's obstacle holding, California clearly addressed the issue in its opening brief.

to preserve a variety of safety devices from which manufacturers could choose).

Section 599f would only serve as an obstacle to the FMIA if its requirements were so onerous and confusing that it put slaughterhouse compliance with federal inspection standards at risk. Nothing in the record suggests that this is the case, nor will we assume it to be. *Cf. Empacadora*, 476 F.3d at 334 ("The need for uniform meat packaging, inspection and labeling regulations is strong, lest meat providers be forced to master various separate operating techniques to abide by conflicting state laws. There is no similar need for uniformity with regard to what types of meat states permit to be sold . . . ."). Section 599f's directive to slaughterhouses is simple: When slaughterhouses see a nonambulatory animal, they cannot slaughter it for human consumption but must euthanize it immediately. There is no reason to believe that slaughterhouse employees who abide by this directive will have any difficultly complying with federal inspection standards as to those animals that will be slaughtered for food.**[7]**

## **Humane Handling Requirements**

**[9]** Section 599f(e) provides that "[w]hile in transit or on the premises of a stockyard, auction, market agency, dealer, or slaughterhouse, a nonambulatory animal may not be dragged at any time, or pushed with equipment at any time . . . ." Federal law, by contrast, says that "[t]he dragging of disabled animals and other animals unable to move, *while conscious*, is prohibited. *Stunned animals may, however, be dragged*." 9 C.F.R. § 313.2(d)(2) (emphases added). And while the FMIA's inspection requirements apply to animals

---

**[7]**NMA suggests that section 599f will prevent the examination of downer animals for disease, hindering federal procedures designed to identify and stem the spread of disease. Nothing in the record substantiates this concern, and section 599f doesn't prohibit post-mortem inspection of downer animals.

that are to be slaughtered for human consumption, the FMIA's humane handling requirements apply to all animals at the slaughterhouse. FSIS Directive 6100.1 at 4 ("All animals that are on the premises of the establishment . . . are to be handled humanely."). Section 599f(e) thus prohibits conduct—the dragging of unconscious downer animals—that federal law does not.

**[10]** Federal law also considers more equipment suitable for the purposes of moving downer animals, such as electric prods, than does section 599f(e). *Compare* 9 C.F.R. § 313.2(d)(3) ("Disabled animals and other animals unable to move may be moved, while conscious, on equipment suitable for such purposes; e.g., stone boats."), *and* FSIS Directive 6900.1(V)(E) (suitable equipment includes "forklift or bobcat-type vehicles and self-propelled tractors capable of pulling stone boats (sleds) or similar conveyances, those conveyances themselves, and holding chutes, and a voltmeter or other suitable equipment that is capable of verifying voltage of electric prods attached to AC current."), *with* Cal. Pen. Code § 599f(e) (nonambulatory animals "shall be moved with a sling or on a stoneboat or other sled-like or wheeled conveyance."). Section 599f(e) is thus a regulation of the "operations" of an "establishment at which [federal] inspection is provided" that's "in addition to[ ] or different than" federal law and is therefore expressly preempted. 21 U.S.C. § 678.

Although NMA is likely to succeed on its express preemption claim against section 599f(e),[8] it must still show a likelihood of irreparable injury and that the balance of the equities and the public interest tip in its favor in order to justify a preliminary injunction. *See* pp. 5073-74 *supra*. The district

---

[8]Contrary to NMA's argument, the likelihood of success as to section 599f(e) doesn't affect the likelihood of success as to section 599f(a)-(c). *See Dalton* v. *Little Rock Family Planning Servs.*, 516 U.S. 474, 478 (1996) (enjoining provision only to the extent that it imposes obligations inconsistent with federal law).

court's findings concerning irreparable injury and the balance of the equities focus on the costs of complying with section 599f's ban on the receipt and slaughter of downer animals. The district court failed to make such findings as to section 599f(e)'s humane handling requirements, probably because NMA failed to offer any evidence on the issue.

\* \* \*

**[11]** NMA isn't likely to succeed on its preemption claims against section 599f(a)-(c)'s ban on the receipt and slaughter of downer animals. And although NMA is likely to succeed on its preemption claim against section 599f(e)'s humane handling provision, it hasn't shown a likelihood of irreparable injury or that the balance of the equities and the public interest tip in its favor for this provision. The district court therefore abused its discretion in granting a preliminary injunction, and the injunction is hereby vacated. Nothing we say here precludes the entry of a preliminary injunction as to section 599f(e) after appropriate findings are made, or a preliminary injunction as to the entirety of section 599f based on other legal theories, *see* p.5073 n.2 *supra*.

**VACATED.**

No costs.