## WESTMORELAND BREWING CO., Inc., et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. November 26, 1923.)

No. 3016.

1. Intoxicating liquors ⬤══279—Officers of brewing company held liable for contempt for violation of injunction.

Where, in an abatement suit, against a brewery under National Prohibition Act, tit. 2, § 22 (Comp. St. Supp. 1923, § 10138½k), the court enjoined manufacture or sale therein in violation of law, but permitted the corporation owner to continue its operation on giving bond to comply with the order, the officers and directors of the company are responsible for the subsequent lawful conduct of the business and liable for contempt for violation of the injunction.

2. Searches and seizures ⬤══7—Where a brewery was operated under an order of court, taking samples of the product by revenue officers was not unreasonable search and seizure.

Where a brewery was operating under an order of court, made in an abatement suit, permitting such operation on condition that the product should conform to the law, the taking of samples of the product by revenue officers, though without a search warrant, was not an unreasonable search and seizure.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Suit in equity by the United States against the Westmoreland Brewing Company, Inc., and others. From an order (294 Fed. 735) adjudging defendants guilty of contempt, they appeal. Affirmed.

Certiorari denied 44 Sup. Ct. 231, 68 L. Ed. ——.

John Duggan, of Uniontown, Pa., for appellant.

Walter Lyon, U. S. Atty., and A. W. Henderson and George V. Moore, Asst. U. S. Attys., all of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This is an appeal by the Westmoreland Brewing Company, Louis Brown, its president, Maurice Farkas,

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its secretary, and Charles Messner, its treasurer, from an order of the District Court, made March 7, 1923, adjudging them all guilty of contempt of an injunction order issued by that court on July 29, 1922. In pursuance of said decree, the company was sentenced to pay a fine of $1,000, and the other three appellants, Brown, Messner, and Farkas, were severally sentenced to pay a fine of $500 each, and to imprisonment for 30 days in the Allegheny county jail.

[1] We have carefully examined the testimony and proofs in this case, and are satisfied the court was abundantly justified in imposing the comparatively light sentence which it did for violation of its order. The proofs show that on July 29, 1922, the United States filed a bill in equity under the provisions of section 22, title 2, of the National Prohibition Act (Comp. St. Supp. 1923, § 10138½k), alleging the Brewing Company was manufacturing and selling in its plant intoxicating liquors, in violation of the prohibition law, and prayed that said premises be adjudged a common nuisance, as defined by said act. The bill was accompanied by affidavits showing numerous, persistent, and large sales and deliveries of illegal intoxicants. On the same day the court, being satisfied "that a nuisance exists as described in said bill of complaint," ordered that, pending final decree, the defendant and its officers and agents be restrained from making and selling intoxicating liquors on said premises in violation of law. Instead of closing the nuisance, as the court would seem to have been justified in doing, had it seen fit so to do, it very considerately gave an opportunity for hearing on the question of lawfully continuing their business, and only making beer which was in compliance with law, and "being satisfied that the said defendant has in good faith entered said bond," on the 2d day of August ordered that "the property, if held under the order of abatement, be delivered to the said owner," and accepted a bond of $1,000 from the company, with surety, conditioned that the defendant company "shall refrain from manufacturing, selling, keeping, or bartering any intoxicating liquor on the premises aforesaid," and "from conducting or permitting the continuance of a nuisance upon said premises." This bond was executed by the brewing company, acting through Brown, its president, who signed it.

It will thus be seen that thereafter the operations of said company were by permission of the court, and the acceptance of this permission by the company and its officers called for the exercise toward the court of the utmost good faith and legality of action by the officers of the company. But the proofs in this case show an entire absence of any effort on the part of these officers to see that such good faith was kept. On the contrary, by the information later filed for an attachment, by the proofs of the case, and by the finding of the court below, it appears that on December 27, 1922, the prohibition officers who visited the brewery found its employees in the act of loading a freight car on the railroad siding in front of the brewing company's plant with barrels of beer. Samples were taken by the agents from beer in the freight car, from that in the racking room of the brewery, and from the shipping platform. The samples from the car and the platform were found to contain alcohol over 3 per cent. in volume. The court below in its opinion (294 Fed. 735) stated, and we agree therewith, that:

"This corporation was engaged in the brewing and manufacture of beer, and we do not think the brewery could manufacture this product with the alcoholic volume contained without the full knowledge and authority of the officers named."

Indeed, the only effort to purge themselves of contempt, or of any attempt on the part of Brown and the other defendants to enforce the order, was, as found by the court, that at a directors' meeting they warned each other to comply with the court's order. In point of fact, as noted above, Brown had executed the good faith bond given to the court, and it is idle for him and his associates, the executive officers of this company, to attempt to escape responsibility for the abuse of the court's order by simply showing they did nothing. They were intrusted by the court with the responsibility of running their business in a lawful way—that is, of not making beer with an unlawful alcoholic volume—and the simple fact is that, being in a position where they could and should have done so, they did not do so. The injunction orders of courts would amount to nothing, if the executive officers of a brewery could thus escape responsibility for willful and profitable violations and abuse of the court's considerate action in allowing them to continue their business of manufacturing a lawful product. Their duty to the court was, not to close their eyes in order to allow law violations, but to keep them open to prevent them.

[2] Complaint is made that the revenue officers, who had no search warrant, had no right to examine and take samples of this unlawful beer. This contention is without weight. Some of the unlawful beer was already on the railroad car, and other barrels were on the platform, in process of being shipped. That a court, under whose permission a brewery was operating, could not receive as competent the testimony and samples thus taken by the prohibition officers, which evidenced a violation of the court's order, is a contention that we cannot accede to. The Constitution (Fourth Amendment) provides, not against any search, but against "unreasonable searches and seizures."

The judgment below is affirmed, and this record will in due course be remitted to the court below, in order to carry its sentences into effect, as an example that the orders of court, once made, cannot be ignored or trifled with.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes