## UNITED STATES *v.* BARNES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF KENTUCKY.

No. 565.   Argued October 24, 1911.—Decided January 9, 1912.

The maxim *expressio unius est exclusio alterius* is a rule of construction and not of substantive law, and serves only as an aid in discovering legislative intent when not otherwise manifest.

The mention in the Oleomargarine Act of August 2, 1886, c. 840, 24 Stat. 209, § 3, of certain specified sections of the Revised Statutes, which relate to special taxes, as applicable to the special taxes imposed by § 3, may exclude other sections relating to special taxes but does not exclude as inapplicable to the collection of the taxes imposed by, and enforcement of, the Oleomargarine Act, § 3177, Rev. Stat., which is general in its terms, and relates to all articles and objects subject to internal revenue tax.

In view of the custom of embodying National legislation in codes and systematic collections of general rules, it is the settled rule of decision of this court that subsequent legislation upon a subject covered by a previous codification carries the implication that general rules are not superseded by such subsequent legislation except where it clearly appears.

Where there is a codification of revenue laws to prevent fraud, the inference is that subsequent legislation is auxiliary to the earlier, and only in case of manifest repugnancy will it be construed as an abrogation thereof. *Wood* v. *United States*, 16 Pet. 342, 363.

THE facts, which involve the construction of the Oleomargarine Act of 1886, and the applicability of § 3177, Rev. Stat., are stated in the opinion.

*Mr. Assistant Attorney General Harr* for the United States:

Oleomargarine is an "article or object subject to tax" to which § 3177 of the Revised Statutes applies, and there is nothing in the Oleomargarine Act to warrant its exclusion.

By conferring special and limited authority upon the internal revenue officers in respect to the manufacture or

sale of oleomargarine, Congress cannot be held to have intended to deny them the ordinary powers possessed by them as revenue officers.

Clearly, in the absence of any provision in the Oleomargarine Act expressly or by clear implication negativing the view, these general powers and duties of the revenue officers must be held to apply in the enforcement of that act.

To hold otherwise is to say that the oleomargarine business alone is to be exempted from the necessary and salutary provisions of the law for the enforcement of internal revenue taxes and the prevention of fraud in respect thereto. *United States* v. *Fisher*, 2 Cranch, 386; *The Brig Ann*, 9 Cranch, 289.

The Oleomargarine Act of 1886, being a revenue act, *In re Kollock*, 165 U. S. 526, 536, should be construed together with the general statutes relating to collection of and the prevention of frauds upon the revenue, especially as it contains no adequate provisions on that subject and would be practically inoperative otherwise. *Saxonville Mills* v. *Russell*, 116 U. S. 13, 21.

The departmental construction is that general internal revenue statutes apply in oleomargarine cases. T. D. Int. Rev., No. 1266; 26 Op. A. G. 282.

The construction given to a statute by those charged with the duty of executing it will be given great weight by the court if the true construction be doubtful. *United States* v. *Hammers*, 221 U. S. 220, 228.

The judicial construction of the statute is that general internal revenue statutes are applicable in oleomargarine cases. *United States* v. *Thomas Fitzsimmons*, Dis. C. U. S. for Dist. of Michigan (not reported); *Hastings* v. *Herold*, 184 Fed. Rep. 759; *Rosencrans* v. *United States*, 165 U. S. 257, 262.

The decisions cited in the opinion below are inapplicable or erroneous.

*Mr. Henry M. Johnson* for defendants in error:

In analogous cases, provisions of the Revised Statutes have been held inapplicable. *In re Archer*, 9 Benedict, 428.

As to the applicability of § 3176 to taxes imposed under the Succession Tax Law, see *Wright* v. *Blakeslee*, 101 U. S. 174.

Congress has always regarded it as necessary, where it considered it desirable for the machinery of § 3177 and the three preceding sections to apply to some new object of taxation, to so state specifically and in unmistakable terms. See the War Revenue Act, 30 Stat. 466, and Income Tax Act, § 34, Act August 28, 1894, 28 Stat. 557, § 36 of same act on p. 559.

The applicability of the part of the act of June 30, 1864, of which § 3177 is a part, to the Oleomargarine Law has been raised in five cases, two of which went to different Circuit Courts of Appeal, sixth and eighth circuits, and in all of those cases the courts held that the act of 1864 did not apply to the Oleomargarine Law. See *In re Kearne*, 64 Fed. Rep. 481; *In re Kinney*, 102 Fed. Rep. 468; *Schafer* v. *Craft*, 144 Fed. Rep. 908; *S. C.*, on appeal, 153 Fed. Rep. 176; *S. C.*, on reconsideration, 154 Fed. Rep. 1002; *Grier* v. *Tucker*, 150 Fed. Rep. 658; *S. C.*, on appeal, 160 Fed. Rep. 611. All of above cases were cited with approval in *United States* v. *Lamson*, 165 Fed. Rep. 83.

The provisions in question from their very nature have no application to taxes imposed under the Oleomargarine Law.

Even if departmental construction is in accordance with the contention that general internal revenue statutes apply in oleomargarine cases, the rule of giving weight to the construction given by those whose duty it has been to apply the statute is never applied where the intention of the law-making body is to be gathered from the act itself. The rule urged is not a controlling rule, but a rule which is only applicable where the construction of

the statute is in doubt and some rule is needed to turn the evenly balanced scale.

Here it is evident that it was the clear intention of the law-making body that § 3177 should not apply to taxes imposed under the Oleomargarine Law.

The Commissioner of Internal Revenue cannot, by a construction which he places upon an act, extend a penal statute by implication. Penalties are never extended by implication. *United States* v. *Harris*, 177 U. S. 395; *Elliott* v. *Railroad Co.*, 95 U. S. 573; *Erskine* v. *Railway Co.*, 94 U. S. 619; *The Ben R.*, 134 Fed. Rep. 785; *United States* v. *Eaton*, 144 U. S. 677.

No mere omission or failure to provide for contingencies will justify judicial addition to a statute. *United States* v. *Goldenberg*, 168 U. S. 103; *Glover* v. *United States*, 164 U. S. 295; *McKee* v. *United States*, 164 U. S. 287.

The construction of a tariff act by the Treasury Department is not conclusive upon either party, and the collector is not justified by such instructions in imposing duties not warranted by law. *Leming* v. *Marshall*, 15 Fed. Cases, 8243; *Balfour* v. *Sullivan*, 17 Fed. Rep. 233; and see also *United States* v. *Allen*, 14 Fed. Rep. 263; *Dollar Savings Bank* v. *United States*, 19 Wall. 227; *Wright* v. *Blakeslee*, 101 U. S. 174.

The Oleomargarine Law contains adequate provisions for its enforcement, and the failure of Congress, when it incorporated certain provisions of the so-called general internal revenue laws into the Oleomargarine Act, to incorporate § 3177, clearly evidenced an intention of Congress that said section should not be applicable.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The sole question presented for decision by this writ of error is, whether Rev. Stat., § 3177, is applicable to the col-

lection or enforcement of the specific tax imposed on oleomargarine by the act of August 2, 1886, c. 840, 24 Stat. 209. In the District Court a negative answer to the question was given, and an indictment drawn and returned upon the contrary view was held bad upon demurrer. To a right appreciation of the question it is essential that a brief outline be given of the internal revenue laws, of which § 3177 is a part, and of the later Oleomargarine Act.

Title XXXV of the Revised Statutes is a codification and consolidation, according to an orderly arrangement, of all the then existing laws relating to internal revenue. It is subdivided into chapters, each embracing cognate sections bearing upon a particular branch of the general subject. The first two chapters, one dealing with the officers of internal revenue and the other with assessments and collections, are, with minor exceptions, general in their terms and application. The third chapter deals with "special taxes" exacted of those who engage in designated classes of business, such as rectifying or selling distilled spirits and manufacturing or selling cigars; other chapters deal separately with specific taxes imposed upon particular articles or objects, such as distilled spirits and cigars, and the final chapter comprises provisions common to several objects of taxation. Section 3177 is a part of the second chapter, dealing with assessments and collections, and reads:

"Any collector, deputy collector, or inspector may enter, in the day-time, any building or place where *any articles or objects subject to tax* are made, produced, or kept, within his district, so far as it may be necessary, for the purpose of examining said articles or objects. And any owner of such building or place, or person having the agency or superintendence of the same, who refuses to admit such officer, or to suffer him to examine such article or articles, shall, for every such refusal, forfeit five hundred dollars. And when such premises are open at night, such officers

may enter them while so open, in the performance of their
official duties. And if any person shall forcibly obstruct or
hinder any collector, deputy collector, or inspector, in the
execution of any power and authority vested in him by law,
or shall forcibly rescue or cause to be rescued any property,
articles, or objects after the same shall have been seized by
him, or shall attempt or endeavor so to do, the person so
offending, excepting in cases otherwise provided for, shall,
for every such offense, forfeit and pay the sum of five
hundred dollars, or double the value of the property so
rescued, or be imprisoned for a term not exceeding two
years, at the discretion of the court."

It will be perceived that the section is comprehensive
in its terms and evidently designed to promote the en-
forcement of the revenue laws as to "any articles or objects
subject to tax."

The act of August 2, 1886, is a revenue law of the same
class as those embodied in Title XXXV of the Revised
Statutes. It imposes a specific tax on oleomargarine and
"special taxes" on those who engage in its manufacture
or sale, and contains several administrative and penal pro-
visions. But it does not purport to be independent of
other legislation or complete in itself. On the contrary,
it plainly contemplates the existence of an established
system of revenue laws to which resort shall be had in
carrying it into effect. Section 3, which imposes the
special taxes, declares that §§ 3232 to 3241, and 3243, of
the Revised Statutes "are, so far as applicable, made to
extend to . . . . the *special taxes imposed by this sec-
tion*, and to the persons upon whom *they* are imposed."

It is the express extension of those sections to the special
taxes imposed by the Oleomargarine Act which gives rise
to the question before stated. The position taken by the
defendants in error, and sustained by the District Court,
is, that that extension of particular sections is an implied
exclusion of all others. *Expressio unius est exclusio alterius.*

We are unable to assent to that position. The maxim invoked expresses a rule of construction, not of substantive law, and serves only as an aid in discovering the legislative intent when that is not otherwise manifest. In such instances it is of deciding importance; in others, not. In the instance now before us too much is claimed for it. The sections named in § 3 of the Oleomargarine Act are a part of chapter 3 of Title XXXV of the Revised Statutes. They relate exclusively to special taxes and are so restricted in their terms that it is at least doubtful that they could be applied to any special taxes not imposed by that chapter, unless expressly extended to them. To illustrate, § 3232, which precedes the others and is more or less a key to their meaning, declares: "No person shall be engaged in or carry on any trade or business *hereinafter mentioned* until he has paid a special tax therefor in the manner *hereinafter provided.*" On the other hand, the sections in chapters 1 and 2 are, with minor exceptions, so general in their terms as to leave no doubt of their applicability to taxes imposed by subsequent legislation containing no provision to the contrary. In other words, the difference between the sections named and those in chapters 1 and 2 discloses an occasion for affirmatively extending the operation of the former and no occasion for mentioning the latter. It also is apparent that the Oleomargarine Act will measurably fail of its purpose if the general provisions of chapters 1 and 2 are not applicable to the taxes which it imposes; for, as before indicated, it does not in itself provide a complete or effective scheme for their enforcement. Neither does it contain any provision for the redress of those from whom such taxes are erroneously or illegally exacted, although the settled policy of the Government long has been to afford relief from all such exactions, as is shown by §§ 3220, 3226, 3227 and 3228 in chapter 2. These omissions are cogent evidence that it is intended that recourse shall be had to the

general provisions of chapters 1 and 2, save as in the Oleo-margarine Act it may be provided otherwise.

Much of our national legislation is embodied in codes, or systematic collections of general rules, each dealing in a comprehensive way with some general subject, such as the customs, internal revenue, public lands, Indians, and patents for inventions; and it is the settled rule of decision in this court that where there is subsequent legislation upon such a subject it carries with it an implication that the general rules are not superseded, but are to be applied in its enforcement, save as the contrary clearly appears. Thus, in *Wood* v. *United States*, 16 Pet. 342, 363, where a question arose as to what effect should be given a general provision of an early customs law in view of a later enactment upon that subject, it was said: "And it may be added that in the interpretation of all laws for the collection of revenue, whose provisions are often very complicated and numerous to guard against frauds by importers, it would be a strong ground to assert that the main provisions of any such laws sedulously introduced to meet the case of a palpable fraud, should be deemed repealed, merely because in subsequent laws other powers and authorities are given to the custom-house officers, and other modes of proceeding are allowed to be had by them before the goods have passed from their custody, in order to ascertain whether there has been any fraud attempted upon the government. The more natural, if not the necessary inference in all such cases is, that the legislature intends the new laws to be auxiliary to, and in aid of the purposes of the old law, even when some of the cases provided for may equally be within the reach of each. There certainly, under such circumstances, ought to be a manifest and total repugnancy in the provisions, to lead to the conclusion that the latter laws abrogated, and were designed to abrogate the former." In *Saxonville Mills* v. *Russell*, 116 U. S. 13, 21, it was said, in disposing of a like

question: "It would be an unsound and unsafe rule of construction which would separate from the tariff revenue system, consisting of numerous and diverse enactments, each new act altering it, in any of its details, or prescribing new duties in lieu of existing ones on particular articles. The whole system must be regarded in each alteration, and no disturbance allowed of existing legislative rules of general application beyond the clear intention of Congress." And in *Catholic Bishop of Nesqually* v. *Gibbon*, 158 U. S. 155, 166, 167, where the question was, whether general statutes defining the powers of the officers of the Land Department were applicable to a grant of public lands by a subsequent act of Congress, it was said: "While there may be no specific reference in the act of 1848 of questions arising under this grant to the land department, yet its administration comes within the scope of the general powers vested in that department. . . . It may be laid down as a general rule that, in the absence of some specific provision to the contrary in respect to any particular grant of public land, its administration falls wholly and absolutely within the jurisdiction of the Commissioner of the General Land Office, under the supervision of the Secretary of the Interior. It is not necessary that with each grant there shall go a direction that its administration shall be under the authority of the land department. It falls there unless there is express direction to the contrary."

We conclude that, while the express extension of particular sections in chapter 3, dealing with special taxes, to the like taxes imposed by § 3 of the Oleomargarine Act may operate as an implied exclusion of the other sections in that chapter, it does not in any wise restrict or affect the operation of any of the general sections in chapters 1 and 2. And as § 3177 is a part of chapter 2, is general in its terms, and does not appear to be repugnant to any provision in the Oleomargarine Act, we think the ques-

tion first above stated must be answered in the affirmative.

The cases of *Craft* v. *Schafer*, 154 Fed. Rep. 1002; *Tucker* v. *Grier*, 160 Fed. Rep. 611, and *Hastings* v. *Herold*, 184 Fed. Rep. 759, although not involving § 3177, disclose some contrariety of opinion in the lower Federal courts upon the matter principally discussed herein, and we deem it appropriate to observe that our conclusion has been reached only after a careful consideration of those cases.

*Reversed.*