### NUCKOLLS v. UNITED STATES.
### No. 1160.

Circuit Court of Appeals, Tenth Circuit.
March 22, 1935.

Roger Underwood, of Pueblo, Colo. (A. W. McHendrie and Vena Pointer, both of Pueblo, Colo., on the brief), for appellant.

John Paul Jackson, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Wm. B. Waldo, Sp. Assts. to Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for the United States.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Ezra Nuckolls, in his lifetime, owned 700 shares of stock of the Nuckolls Packing Company. Its March 1, 1913, value is stipulated to have been $33,600. On November 2, 1929, Nuckolls sold this stock for $105,000; he received $15,000 in cash and three notes of $30,000, each secured by 200 shares of the stock so sold, due in six, twelve and eighteen months respectively. The notes were worth their face on December 28, 1929. For many years, Nuckolls had filed income tax returns on the basis of cash receipts and disbursements.

Nuckolls died on December 28, 1929. His executrix, plaintiff below and appellant here, filed a return on a cash basis for the period from January 1, 1929, to December 28, 1929. She returned so much of the profit as was represented by the $15,000 cash received, availing herself of the privilege extended by section 44 (b) of the Revenue Act of 1928, 26 USCA § 2044 (b), of returning only that proportion of the profit on an installment sale as is represented by the installments paid during the taxable year. The Commissioner, relying upon section 44 (d) of the same act, 26 USCA § 2044 (d), made an additional assessment based on the value of the $90,000 deferred payment notes at the date of the death. The additional assessment was paid under protest; claim for refund was seasonably filed and disallowed, and this action brought to recover. Judgment went for the defendant in the court below. On this appeal, it is argued that if section 44 (d) covers the case, it is unconstitutional for that it imposes a tax on the income of decedent during his lifetime because of an event—transmission of his property—which did not occur in his lifetime, and measures the profit not by the value of

the notes when the sale was made, but at a different date, the time of the transmission.

Section 44 (d) of the Revenue Act of 1928, reads:

*"Gain or Loss upon Disposition of Installment Obligations.* If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

This section furnishes exact support for the action of the Commissioner and the judgment below. An installment obligation was transmitted; gain thereby resulted to the extent of the difference between the basis of the obligation and its fair market value at the time of its transmission. Appellant contends that this section is an exercise of power not within the compass of the Sixteenth Amendment as expounded in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, and Hoeper v. Tax Commission, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248; and that it deprives the estate of its property without due process of law as in Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772.

■ Appellant's argument, if we understand it, is based upon the assumption that when property is sold on deferred payments, there is no profit which Congress may constitutionally tax until the deferred payments are collected. With that assumption, we disagree. When property is sold on deferred payments a profit arises if the value received exceeds the cost or the March 1, 1913, value. Congress has the undoubted power to tax that profit in the year in which the sale is made. Prior to the Revenue Act of 1926 the entire profit was taxed in the year of the sale; under the 1926 and 1928 acts the entire profit is taxed except in certain circumstances. No authority is cited in support of this underlying assumption, and we have not the slightest doubt that Congress has the power to tax the profits of a sale when it is made, even if part of the purchase price is represented by deferred payments, and is not bound to postpone the tax until the deferred payments are collected.

■ The contention is made that the section is unconstitutional because it measures the profit by the value of the deferred obligations as of the time of their disposal or transmission, rather than as of the date of the sale. The section should be read with other provisions of this and earlier statutes to get at its true intent and purpose. United States v. Barnes, 222 U. S. 513, 32 S. Ct. 117, 56 L. Ed. 291; United States v. Sweet, 245 U. S. 563, 38 S. Ct. 193, 62 L. Ed. 473; United States v. Jefferson Elec. Mfg. Co., 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859.

Prior to the enactment of section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d), there was no statutory authority for postponing the tax on gains realized from sales until deferred payments were collected, although regulations had been theretofore promulgated to permit such postponement, the validity of which was in doubt. Appeal of Todd, 1 B. T. A. 762; Appeal of Blum's, Inc., 7 B. T. A. 737, 751. The regulations and the subsequent statutes did no more than to grant to taxpayers the privilege of returning gain from certain sales in subsequent years; the language is, "the income may * * * be returned on the basis and in the manner above prescribed in this subdivision."[1] Unless the taxpayer so elected, section 111 (c) Revenue Act 1928 (26 USCA § 2111 (c), applied, i. e., "the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

■ After taxpayers were accorded the privilege of postponing the tax on the gain from deferred payment sales, another move was made in the perpetual contest between the taxpayers and the taxing authorities. Many taxpayers electing to avail themselves of the installment privilege disposed of the unpaid installments, and contended, with some success, that the profit represented by the unpaid installments escaped any tax. To meet this move, Congress in 1928 passed

---

[1] Tull & Gibbs v. United States (C. C. A. 9) 48 F.(2d) 148, holds that the taxpayer has the option, and that he must take it with its burdens.

section 44 (d) above quoted. The Committee Reports to Congress (H. Rep. No. 2, 70th Cong., 1st Sess., pp. 14, 16) make the purpose entirely clear, if the language of the subsection, its context, and its history, admit of any doubt. Congress simply attached a condition to the option granted taxpayers by section 44, to the effect that if the taxpayer disposes of or transmits the deferred obligations, he will pay the balance of the tax measured by the then value of the obligations.[2] This condition is designed to plug a leak which tax counsel had discovered in a plan enacted for the benefit of taxpayers. Congress is not required by the Constitution to extend the privilege at all, as indeed it did not prior to 1926; when it did so, it had a right to attach thereto this condition. The taxpayer is not obliged to avail himself of the privilege conferred; if he does so, he takes it with the condition attached. He cannot complain that his constitutional right has been invaded by virtue of his own voluntary act in availing himself of a conditional privilege tendered him. If he does not like the condition, he need not exercise the option. Appellant, availing herself of the privilege granted by section 44 (b), at the same time challenges the constitutional validity of section 44 (d) which is an integral part and an inseparable condition of section 44 (b). This she cannot do. One claiming under a statute may not deny its validity. Kansas City, M. & B. R. Co. v. Stiles, 242 U. S. 111, 117, 37 S. Ct. 58, 61 L. Ed. 176; Grand Rapids & Indiana R. Co. v. Osborn, 193 U. S. 17, 29, 24 S. Ct. 310, 48 L. Ed. 598; Baltimore & O. R. Co. v. Lambert Run Coal Co. (C. C. A. 4) 267 F. 776.

The metaphysical contention that the transmission occasioned by death cannot be said to have occurred during life is beside the point. When appellant exercised this option, she agreed to pay a tax measured by the value of the notes at the time of Ezra Nuckolls' death. That was a part of the offer made by the statute; when she accepted it, she accepted all of it, and not a part.

Counsel contend that the value of the deferred payments might increase after the sale, and thus the tax eventually be larger than if the whole gain was taxed when the sale was made. So it might; or the value might decrease, and the tax be less. Such possibilities are for the consideration of the taxpayer when he decides how to report his income. He is under no compulsion to make return under section 44; if he thinks the value of his notes will increase, he can make his return under section 111 (c). When he does elect, he is bound and cannot thereafter complain of his bargain.

The difficulties suggested by appellant disappear when it is remembered that the sale made on November 2, 1929, gave rise to taxable income in the amount of the difference between $33,600 and the price for which the stock was sold—$105,000 if the notes were then worth their face. Whatever their value, the gain, if any, was then realized and taxable. The taxpayer was given the option to pay a tax on only a part of the realized gain during that year upon condition that if he died or sold the notes, he would pay an additional tax calculated on the then value of the notes. Appellant accepted the offer and became bound by its terms. We know of no constitutional impediment to such an offer and acceptance.

Formidable support for the conclusions reached may be found in Williams v. Com'r, 30 B. T. A. 1346; Ross v. Com'r, 29 B. T. A. 227; Provident Trust Co., Executor of Estate of Osborne v. Com'r, 29 B. T. A. 374.

The judgment below is affirmed.

---

[2] The Committee reports accompanying an amendment to this section made in 1932 disclose this to be the understanding of Congress. S. Rep. 665, H. Rep. 1492, 72 Cong., 1st. Sess.