## MASTER INSTITUTE OF UNITED ARTS, Inc. v. UNITED STATES.

### No. 252, Docket 20963.

Circuit Court of Appeals, Second Circuit.

May 13, 1948.

Greenbaum, Wolff & Ernst, of New York City (Jones J. Shapiro and Milton Ross, of Brooklyn, N. Y., of counsel), for plaintiff-appellant.

John F. X. McGohey, U. S. Atty., of New York City (James A. Devlin, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff brought this action to recover a refund of $1,724.36 paid by it to a Collector of Internal Revenue as a documentary stamp tax under Section 1801 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1801, upon a modification agreement made in 1944 between the plaintiff obligor and a New York corporation which was the obligee on a bond and mortgage for $1,674,800 dated and issued in 1935 and due December 31, 1949. The plaintiff claims that the tax was unlawfully assessed against it. The District Court rejected the claim and directed a judgment dismissing the complaint from which the plaintiff appeals. We think the judgment was right and should be affirmed.

The plaintiff is an educational corporation organized under the laws of the State

of New York. When it had difficulty in meeting the interest provisions of the bond and mortgage, these documents were modified by an agreement in 1939 on which no tax was claimed. In 1944 it became apparent to the parties that the plaintiff would be unable to meet the provisions of the bond and mortgage as modified by the 1939 agreement, so that a second modification agreement was made upon which the tax involved in this action for refund was claimed and collected under Section 1801. The 1939 agreement was in terms cancelled and superseded by the 1944 agreement. The provisions of this section which are applicable to the assessment of a documentary stamp tax upon the modification agreement of 1944 are the following:

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue * * *."

The bond issued in 1935, and upon which a tax under Section 1801 was originally paid, provided the following different interest rates: (a) For the five-year period from January 1, 1935 to December 31, 1939, interest was made payable semi-annually at the rate of 4% per annum to the extent that plaintiff's surplus income (as defined in the bond) should suffice for such payment. For this period therefore the obligation was in the nature of an income bond with respect to the payment of interest. (b) For the next five-year period from January 1, 1940 to December 31, 1944, interest was made payable semi-annually at the rate of 4% per annum without reference to surplus income. (c) For the final five-year period from January 1, 1945 to December 31, 1949, the interest rate was increased to 6%, likewise without reference to surplus income.

On or about December 29, 1939, the plaintiff and the obligee under the bond executed an agreement which modified the above provisions as follows: To provide for the payment of interest for the second period, i. e., January 1, 1940 to December 31, 1944, at the rate of 2% per annum in lieu of the 4% originally fixed; to require amortization payments of $26,800 per annum, payable at plaintiff's option in stock of the obligee for which credit was given at its par value of $100 although its market value was then about $12 per share. During the first four years provided for in the foregoing 1939 agreement, 1940 through 1943, the plaintiff made amortization payments to the obligee in stock of the latter, which under the terms of credit allowed by that agreement, amounted to $107,200, leaving a balance of $1,567,600.

On or about February 4, 1944, the second modification agreement was made, effective as of January 1, 1944. For the year 1944 the 1939 agreement was modified as follows: Interest was reduced from 2% to 1% and amortization payments were changed from $26,800 to an amount determined by the excess of $40,000 per annum over the interest payable that year. For the final period of five years, 1945 through 1949, the terms of the original 1935 bond were similarly changed to provide for only 1% interest and this new amount of amortization. Under the 1944 plan for amortization payments it was provided that upon each payment made the principal would be reduced by three times the amount actually paid. In addition to this the plaintiff was also given the option of paying the balance of the principal indebtedness at a discount of 50% at any time up to six months before the due date.

Neither the 1939 or 1944 agreements extended the maturity date or increased the amount of the debt. Both provided additional security by adding after-acquired property clauses.

It is manifest from the foregoing amendatory agreements of 1939 and 1944 that most fundamental changes were made in the rights and duties of the respective parties which had been evidenced by the original obligation of 1935. These were not minor changes but alterations of a radical nature made to relieve a debtor unable to meet its original obligations. By means of the 1944 agreement the obligor was relieved of very large interest obligations which were reduced to 1% per annum, enabled to discharge a portion of the principal amount at one-third of its face by the amortization

payments, and given the option of completely satisfying the balance of the principal amount at a discount of 50%.

The district judge held that the 1944 agreement did not constitute a renewal of the bond issued by the plaintiff in 1935 within the meaning of Section 1801 of the Code but that it effected such material changes in the original 1935 bond and 1939 modification as to constitute a new and different undertaking which was subject to tax under that section.

It is argued on behalf of the plaintiff-appellant that the provision in Section 1801 of the code expressly taxing renewals is the only provision made for imposing a tax upon any modification of the terms of an original bond. We believe that in the absence of this provision taxing renewals the issuance by a corporation of an instrument so fundamentally different in its obligations from those originally imposed would properly be regarded as a taxable transaction under Section 1801. The word "issue" in the statute should not be so narrowly construed as to exclude such an agreement which supersedes an existing agreement rather than initiates an original debtor-creditor relationship, for the practical effect and substance of the transaction is to create an essentially new undertaking which is an appropriate basis for the tax. Nor can the form and terminology used by the parties be wholly controlling in interpreting the nature of the transaction.

By the proviso clause imposing a tax on "every renewal" it seems to us that Congress merely selected for express mention one of various types of alteration meant to be subjected to the tax, and one which evidently by the unqualified terms of the proviso might be of relatively minor importance. We do not believe that this meant that no other types of modifications were to be taxed. Indeed, we believe that the proviso as to renewals fortifies our interpretation of this section. Like the changes made by the agreement of 1944 in the case at bar, an extension of time relieves pro tanto the payment obligations of the corporation issuing the bond, and at that in only one respect. It seems most unlikely that a broad provision for taxing renewals, where little alteration in the rights of the parties might occur, should be considered to limit the incidence of the general provision of the section by excluding modifications which may be far more substantial in effect. Thus, in the case at bar not only are large payments of interest forgiven but also a great part of the principal obligation may be discounted. It is pushing to an unreasonable extreme the doctrine of expressio unius est exclusio alterius which is to aid in construction where other clearer indications are wanting. Cf. Neuberger v. Commissioner, 311 U. S. 83, 61 S.Ct. 97, 85 L.Ed. 58; United States v. Barnes, 222 U.S. 513, 32 S.Ct. 117, 56 L.Ed. 291. Here the strict provision of the statute taxing renewals certainly was not likely to be meant to exclude a tax upon the fundamentally different obligation created by the agreement of 1944 which we have already fully described.

In his opinion the trial judge said: "A modification which changed none of the major provisions of the original obligations, and did not extend the maturity date would be neither a new issue nor a renewal of a bond and would not be taxable under this section as a mere modification." In other words, he regarded, and we think correctly, the extent of the modification to be the determining factor as to the incidence of the tax. In spite of some difficulty in applying this test which like many other legal standards is a matter of degree it seems the only reasonable way of interpreting the statute. While it cannot be said in advance just how great a modification of the original bond would give rise to a tax liability, we hold that there was such a liability in this case.

While there are no precedents of an appellate court that cover the present state of facts they seem to fall within the dictum of the Ninth Circuit in Campbell River Timber Co. v. Vierhus, 86 F.2d 673, and the principle of the decision of Judge Duffy in the District Court of Wisconsin in Wisconsin Public Service Corp. v. United States, 40 F. Supp. 327.

For the foregoing reasons the judgment is affirmed.