A. Earl **WOOD**, Commissioner of Transportation

v.

**NATIONAL RAILROAD PASSENGER CORP.**

**Civ. No. 14819.**

United States District Court, D. Connecticut.

Jan. 19, 1972.

Robert K. Killian, Atty. Gen., State of Conn., Jack Rubin, Clement J. Kichuk, Asst. Attys. Gen., Hartford, Conn., for plaintiff.

Robert Mendvecky, Gen. Counsel, National Railroad Passenger Corp., Washington, D. C., Edmund W. O'Brien, New London, Conn., for defendant.

## MEMORANDUM OF DECISION, FINDINGS OF FACT and CONCLUSIONS OF LAW

BLUMENFELD, Chief Judge.

### I.

This is an action in which the plaintiff, A. Earl Wood, the Commissioner of Transportation for the State of Connecticut, seeks an injunction restraining the defendant, the National Railroad Passenger Corporation (hereinafter Amtrak), which was created by the Rail Passenger Service Act, Pub.L. 91–518 (Oct. 30, 1970) Sections 101 et seq., 45 U.S.C. § 501 et seq., and incorporated under the laws of the District of Columbia,[1] from

---

1. Although the corporation was to receive "Federal financial assistance as well as investment capital from the private sector," Section 101, it is a "for profit

discontinuing certain passenger service between New Haven and New London, Connecticut.

On December 29, 1971, the court issued an order temporarily restraining the defendant from discontinuing the aforementioned service. On January 6, 1972, a hearing was held on the plaintiff's motion for a preliminary injunction and on the defendant's motions to vacate the temporary restraining order and to dismiss. These motions were grounded on (1) failure to state an action on which relief can be granted; (2) the absence of standing for the plaintiff to bring the action; and (3) lack of jurisdiction over the subject matter of this action. On January 7, 1972, the court extended the temporary restraining order for not more than ten days or until the case was decided.

## II.

Title 28 U.S.C. § 1337 [2] provides that "the district courts shall have jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce . . . ." Since the complaint alleges that Amtrak has an obligation under the Rail Passenger Service Act to provide "Clamdigger" rail passenger service and that discontinuance of this service would constitute a violation of the Act, the instant action arises under the Act. This Act is an "act regulating commerce." Section 101

of the Act indicates that its purpose is to facilitate the establishment of a nationwide system of a modern and efficient rail passenger service through the creation of Amtrak, and Section 306 of the Act provides that Amtrak shall be deemed a common carrier by railroad within the meaning of the Interstate Commerce Act, 49 U.S.C. § 1(3). [3]

The defendant contends, however, that this court is without jurisdiction because only the Attorney General and not the plaintiff has standing to bring this action by virtue of Section 307(a) of the Act, which states:

"If the Corporation or any railroad engages in or adheres to any action, practice, or policy inconsistent with the policies and purposes of this Act, obstructs or interferes with any activities authorized by this Act, refuses, fails, or neglects to discharge its duties and responsibilities under this Act, or threatens any such violation, obstruction, interference, refusal, failure, or neglect, the district court of the United States for any district in which the Corporation or other person (sic) resides or may be found shall have jurisdiction, except as otherwise prohibited by law, upon petition of the Attorney General of the United States or, in a case involving a labor agreement, upon petition of any employee affected thereby, including duly authorized employee representatives,

corporation" and not "an agency or establishment of the United States Government" but "subject to the provisions of . . . the District of Columbia Business Corporation Act." Section 301.

2. Although the complaint does not expressly cite this jurisdictional statute, the averments adequately set forth "the (operative) grounds upon which the court's jurisdiction depends . . . ." Fed.R. Civ.P. 8(a) (1). And since "(a)ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f), the complaint provides an adequate jurisdictional basis.

"The mandate of Rule 8(f), that all pleadings shall be so construed as to do substantial justice, is the heart of the pleading rules, . . . and

when taken in conjunction with Rule 15 stating liberal terms for amendments of pleadings, allow and require decisions to be made on the merits and not on the niceties of pleading." Moore and Fink, Moore's Federal Practice Rules Pamphlet 410 (1966).

3. Federal district courts have jurisdiction of such actions irrespective of the amount involved. Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); Bloomfield S.S. Co. v. Sabine Pilots Ass'n, 262 F.2d 345, 346 (5th Cir. 1959), cert. dismissed, 368 U.S. 802, 82 S.Ct. 20, 7 L.Ed.2d 15 (1961); Springfield Television, Inc. v. City of Springfield, 428 F.2d 1375, 1378 (8th Cir. 1970).

to grant such equitable relief as may be necessary or appropriate to prevent or terminate any violation, conduct, or threat."

While Section 307(a) gives the Attorney General the right to bring actions to restrain Amtrak from violating the provisions of the Act, it does not by its terms specify that a court may never exercise jurisdiction over claims against the corporation unless the action is brought by the Attorney General. A distinction must be drawn between whether a certain plaintiff is a proper party to request an adjudication of a particular issue and whether the court has the power to adjudicate it.

As noted initially, 28 U.S.C. § 1337 provides that "the district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." On its face, this language is a clear predicate for jurisdiction of this case. It is true that Section 307 of the Act is concerned with jurisdiction, but it does not purport to carve out an exception to the traditional grants of jurisdiction. To the contrary. To emphasize that such jurisdiction is not diminished, it expressly states that the district court shall have jurisdiction "*except as otherwise prohibited by law.*" (Emphasis added).

■■■ On this threshold jurisdictional issue, I hold that Section 307 does not deprive this court of the jurisdiction predicated on 28 U.S.C. § 1337.

It is also true that Section 307 specifically authorizes federal district courts to grant equitable relief "upon petition of the Attorney General of the United States . . . ." The defendant argues that by the well-established maxim of statutory construction *expressio unius est exclusio alterius* the plain words of

the statute indicate that only the Attorney General may petition for the imposition of equitable sanctions for violations of the Act. In this instance, too much is claimed for the maxim. See United States v. Barnes, 222 U.S. 513, 519, 32 S.Ct. 117, 56 L.Ed. 291 (1912). The defendant has cited Potomac Passengers Ass'n v. Chesapeake & Ohio Ry., reported sub nom. Congress of Ry. Unions v. Hodgson, 326 F.Supp. 68, 78 (D.D.C. 1971), which does support this contention. The court there stated: "As this section (307(a)) clearly states, the jurisdiction of the courts to apply sanctions for violation of the Act attaches *only* upon the petition of the Attorney General of the United States." (Emphasis added). Since I do not find the italicized word in that section, I do not feel compelled to agree, and with all deference I do not. Nor do I embrace the view that by refusing to adopt the suggestion to a subcommittee of the House Interstate and Foreign Commerce Committee, which held hearings on H.R. 17849 and S. 3706, by a representative of the Railway Labor Executive Association that the words "of any person adversely affected or aggrieved thereby including the duly authorized representatives of any employees of any railroad or of the Corporation" be substituted for the italicized portion of the text of the bill: "upon petition of the Attorney General of the United States, or *in a case involving a labor agreement, upon petition of any individual affected* [4] *thereby,* to grant such equitable relief as may be necessary or appropriate to prevent or terminate any violation, conduct, or threat," Congress meant to give to the Attorney General the exclusive right to seek enforcement of the Act.

The express authority of the Attorney General to petition for equitable relief

---

4. The suggested language would have expanded the concept of party to include persons way beyond those who can meet the "cases" and "controversies" ground for judicial action mandated by article III, section 2 of the Constitution. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942,

20 L.Ed.2d 947 (1968). To meet that requirement, a plaintiff must suffer "injury in fact, economic or otherwise." Association of Data Processing Serv. Organ., Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

against the corporation or any railroad may have been deemed necessary to resolve doubts that the United States had a sufficient "interest" under 28 U.S.C. § 517 to allow him to bring suit to correct conduct of these private businesses, where non-criminal sanctions are involved.

This is not the first time that Congress has recognized that the Attorney General should be given a substantial role in obtaining sanctions to obtain enforcement of responsibilities imposed on persons who carry out government-assisted projects. See, e. g., 42 U.S.C. §§ 3611 (g), 3613.

It should also be noted that if the Attorney General refuses to act, his discretion, if reviewable at all, would be reviewable only under a very limited standard. Cf. Littell v. Morton, 445 F.2d 1207, 1211 (4th Cir. 1971); Fook Hong Mak v. Immigration & Naturalization Serv., 435 F.2d 728 (2d Cir. 1970). The practical effect of his refusal would be to cloak Amtrak and the railroads with governmental immunity. I am reluctant to think Congress intended such a result. Nor is there any indication that the purpose of Congress was to protect the courts against the possibility that they would become overburdened with increased litigation.

The plaintiff is an officer of the State of Connecticut, who has brought this action in his official capacity as Commissioner of Transportation of the State of Connecticut. As such, he has sufficient " 'stake in the outcome of the controversy as to assure . . . concrete adverseness.' " Flast v. Cohen, *supra*, 392 U.S. at 99, 88 S.Ct. at 1952, quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

 Accordingly, for the foregoing reasons the motion to dismiss on the grounds that this plaintiff has no standing to bring this action, and that this court lacks jurisdiction over the subject matter of this action is denied.

Having held that this court has the power to proceed in this action, and that it may be adjudicated on the complaint of the plaintiff, I now turn to the merits

### III.

Section 404(b) (1) of the Act provides:

"The Corporation must provide the service included within the basic system until July 1, 1973, to the extent it has assumed responsibility for such service by contract with a railroad pursuant to section 401 of this Act."

Section 403(a) of the Act provides:

"The Corporation may provide intercity rail passenger service in excess of that prescribed for the basic system, either within or outside the basic system, including the operation of special and extra passenger trains, if consistent with prudent management. Any intercity rail passenger service provided under this subsection for a continuous period of two years shall be designated by the Secretary as a part of the basic system."

The import of these provisions was succinctly explained in the report of the House Committee on Interstate and Foreign Commerce which accompanied the bill which was subsequently enacted as the Rail Passenger Service Act. This report states:

"The corporation is required to provide service within the basic system for a 3-year period ending July 1, 1973. Service in excess of the basic system may be discontinued at anytime, except where such service after 2-year operations becomes a part of the basic system as provided in section 403(a).

"Trains within the basic system which are no longer required by public convenience and necessity or which will impair the corporation's ability adequately to provide other service, may be discontinued by the corporation subject to the procedures of section 13a of the Interstate Commerce Act. No such service may be discontinued however if any State, local, or regional agency offers to reimburse the corporation for not less than 66⅔% of the losses at-

tributable to such service. In case of failure to agree, the matter shall be referred to the Secretary of Transportation for decision." Report No. 9–1580 at 10, 91st Congress, 2d Sess. (October 7, 1970), U.S.Code Cong. & Admin. News, 1970, pp. 4735, 4745.

The complaint, tracking the provisions of Section 404(b), alleges that the Clamdigger rail passenger service between New Haven and New London is "service included within the basic system" and as such must be provided by Amtrak. The plaintiff points to an Amtrak time schedule, effective May 1, 1971, the first schedule issued by Amtrak after its establishment, as evidence showing that the Clamdigger service was "service included within the basic system." [5] This claim is without merit.

The basic system is defined in Section 102(4) as "the system of intercity rail passenger service designated by the Secretary under Title II and Section 403(a) of this Act." Service set forth in time schedules issued by Amtrak does not establish what constitutes the basic system. The manner in which the "basic system" is established is defined by the Act. Title II, Section 201 of the Act, provides:

"In carrying out the congressional findings and declaration of purpose set forth in title I of this Act, the Secretary, acting in cooperation with other interested Federal agencies and departments, is authorized and directed to submit to the Commission and to the Congress within thirty days after the date of enactment of this Act his preliminary report and recommendations for the basic system. Such recommendations shall specify those points between which intercity pas-

senger trains shall be operated, identify all routes over which service may be provided, and the trains presently operated over such routes, together with basic service characteristics of operations to be provided within the basic system, taking into account schedules, number of trains, connections, through car service, and sleeping, parlor, dining, and lounge facilities."

Pursuant to Section 201, the Secretary specified New York and Boston as end points "between which intercity passenger service shall be operated" and identified a route through New Haven and New London as a route "over which service *may* be provided." John A. Volpe, Secretary of Transportation, Final Report on Basic National Rail Passenger System at II–4 (January 28, 1971) (hereinafter referred to as Secretary's Report) (emphasis added). In so doing, the Secretary specifically stated:

"Only those cities actually specified as 'points between which intercity passenger trains shall be operated' are required to be served by the Corporation. All other cities are named for route identification purposes only, and will receive service only if the Corporation elects to provide it or if a State agrees to reimburse the Corporation for a reasonable portion of any losses associated with service in accordance with Section 403(b) of the Act." Secretary's Report at I–9.[6]

■ New Haven and New London were not specified by the Secretary as end points between which service must be provided. Hence, service between these points cannot be deemed "service included within the basic system" with-

---

5. The service in question consists of Trains Nos. 450 and 451 which are presently operated week-days between New Haven and New London with stops at Branford, Pine Orchard, Stony Creek, Leete's Island, Guilford, Madison, Clinton, East Lyme, and Niantic.

6. Section 403(b) provides:
 "Any State, regional or local agency may request of the Corporation rail pas-

senger service beyond that included within the basic system. The Corporation shall institute such service if the State, regional, or local agency agrees to reimburse the Corporation for a reasonable portion of any losses associated with such services."

in the meaning of Section 404(b) (1). Amtrak has no statutory obligation to continue such service inasmuch as Section 404(b) (1) provides that Amtrak must continue only service within the basic system.

## IV.

However, the plaintiff has another string to his bow. During the hearing the plaintiff contended that, even if there is no statutory obligation on the defendant to provide the Clamdigger service, it is under a contractual obligation to do so. In suing on the contract, the plaintiff comes into court on a claim of its own, quite apart from the one based on the Act.[7]

It is not disputed that there is a contract between Amtrak and the Penn Central under which the latter provides the Clamdigger service. Although the actual contract document was not offered in evidence, a "Standard National Railroad Passenger Corporation Contract," which the parties have represented is in essence the contract, was received in evidence. Under this contract, the Penn Central agrees to provide Amtrak with services requested by it for or in connection with intercity passenger service.

■ Since such service was provided and its availability is specifically advertised in a timetable issued by the defendant, the plaintiff argues that the defendant may not terminate or modify that service. However, the contract provides that Amtrak has the right to request modification of rail passenger service. (Article 3, Section 3.2, at 6 of the form contract). Whatever rights the plaintiff may have as a third-party beneficiary are subject to this provision of the contract. The discontinuance of the trains in question would constitute a permissible modification of the service presently provided between New Haven and New London. The defendant's request to the Penn Central to eliminate the Clamdigger service is not in derogation of any rights of the plaintiff.[8]

■ Following the hearing in open court on the plaintiff's application for a temporary injunction, as well as on the defendant's motion to dismiss, the parties agreed in chambers that the hearing should be treated as a trial on the merits. Fed.R.Civ.P. 65(a) (2). Furthermore, since matters outside the pleadings were presented and both parties agreed that no further material was to be presented, the motion to dismiss for failure to state a claim upon which relief can be granted must be treated as one for summary judgment. See Fed.R.Civ.P. 12(b) (6).

Having considered the pleadings, the evidence and other materials submitted

---

7. Jurisdiction of this claim as alleged is based on diversity of citizenship between the parties. 28 U.S.C. § 1332(a). Amtrak is incorporated in the District of Columbia, and under Title 29, § 29–904 of the District of Columbia Code, has the power to sue and be sued. The defendant has stated that the plaintiff is entitled to the Clamdigger service if he pays two-thirds of the operating loss, the minimum provided by § 403(b) and (c) of the Act. The parties agree that the operating loss will be approximately $72,000 per year. Although the complaint merely alleges that diversity jurisdiction exists on the facts presented, counsel for the plaintiff in oral argument specified the details of the amount in controversy. See Fed.R. Civ.P. 8(f) ; cf. Cox v. Livingston, 407

F.2d 392 (2d Cir. 1969). This is sufficient to satisfy the jurisdictional amount requirement of § 1332(a). In the alternative, this claim is properly before the court by way of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

8. Section 401(a) (1) of the Act provides that ". . . any railroad discontinuing a train hereunder must give notice in accordance with the notice procedures contained in section 13a(1) of the Interstate Commerce Act," which, in turn, provides for notice of at least thirty days prior to the date for discontinuance. The plaintiff does not claim that the appropriate notice procedures have not been followed.

to the court, and the briefs and arguments of the parties, I find that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law, and it is

Ordered that judgment be entered for the defendant.

This memorandum of decision constitutes the court's findings of fact and conclusions of law under Fed.R.Civ.P. 52.

## ADDENDUM

In discussing the amount of security which the plaintiff ought to give pending the temporary restraint imposed on the defendant by order of the court, the parties agreed that the losses which the defendant might suffer on account of continuance of the *Clamdigger* service might run to $6,000 per month. Since the defendant had expressed a willingness to continue the service if requested to do so by the plaintiff, and if the plaintiff agreed to reimburse the defendant for no less than 66⅔% of its losses, pursuant to Section 403(b) and (c) of the Act, the court ordered the plaintiff to give security required by Fed.R.Civ.P. 65(c) in the amount of $4,000. Under the circumstances, the bond in that amount may be regarded as affording sufficient security against loss to the defendant for a further period of three days. The court, in its discretion, deems the circumstances sufficient to justify a preservation of the status quo for a further period of three days in order to permit the plaintiff to file a notice of appeal and furnish a bond proper for the security of the rights of the defendant pending an appeal.

*Accordingly*, the dissolution of the restraining order heretofore entered is stayed for a further period of three days to afford the plaintiff an opportunity to obtain a further stay pending appeal, if it is deemed advisable. The filing of a proper bond or security in the amount of $72,000 pending appeal shall be effective to continue the stay order presently in effect pending an appeal.